Tyrone M. QUANN

v.

**WHITEGATE–EDGEWATER, etc., et al.**

Civ. No. K–83–3603.

United States District Court,
D. Maryland.

September 15, 1986.

Norris C. Ramsey, Baltimore, Md., for plaintiff.

Ronald S. Liebman, Scott N. Stone, and Patton, Boggs & Blow, Washington, D.C., and Kenneth B. Tecler, and Chen, Walsh & Tecler, Rockville, Md., for defendants.

FRANK A. KAUFMAN, Senior District Judge.

Tyrone M. Quann, a black male, filed this action against Whitegate-Edgewater, a/k/a Riverdale Apartments,[1] Richard Schlesinger, Daniel Ruda, and David Price, alleging race discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000–2(a)(1). Plaintiff also invokes this Court's pendent jurisdiction over his state law claim for intentional infliction of emotional distress. By Order dated March 17, 1986, defendants' motions to dismiss for insufficiency of service of process pursuant to Federal Civil Rule 12(b)(5), were granted and plaintiff's motion to amend process under Federal Civil Rule 4(h) was denied. For the reasons set forth herein those determinations are hereby reaffirmed.[2]

---

1. Whitegate-Edgewater Apartments and Riverdale Apartments are apparently one and the same. Both names are used by the parties to describe an apartment complex located at Three Byway South, Middle River, Maryland. The complex is owned by Edgewater Equity Limited Partnership, a New Jersey limited partnership doing business in the State of Maryland. Although both names refer to the same apartment complex, that complex is referred to herein as Whitegate-Edgewater unless otherwise specified.

2. When this Court entered its said March 17, 1986 Order, it anticipated filing, shortly thereafter, an opinion in this case. However, because this Court decided that additional research was required, the completion of the within opinion was delayed. Accordingly, the said March 17, 1986 Order is today being withdrawn, in part, and a new Order bearing today's date but reaching the same conclusions set forth in that March 17, 1986 Order is today being filed. Thus, plaintiff will have the right to appeal within the applicable period provided by Federal Appellate Rule 4 if, after reviewing the within opinion, plaintiff so desires.

## FACTS

Plaintiff was employed at Whitegate-Edgewater Apartments from August 1979 until October 11, 1979. Plaintiff and his family also resided in that apartment complex from August 1979 until January 1981. Defendant Richard Schlesinger at all times in issue herein was the owner or managing partner of the partnership property which constitutes the apartment complex. Defendant Daniel Ruda was at all such times the managing agent of the property and defendant Price was the head engineer. Plaintiff alleges that on October 11, 1979 defendants Schlesinger, Ruda and Price held a meeting at which Schlesinger instructed Ruda and Price to "[f]ind some way to get rid of that nigger." Plaintiff maintains that on October 11, 1979 he was the only black employee of Whitegate-Edgewater. Later that day, plaintiff was discharged by defendant Price, allegedly without explanation. Plaintiff further asserts that after his termination he continued to reside at Whitegate-Edgewater during which time he and his family were subjected to several hostile and unlawful acts committed by defendants Ruda and Price including threats on their life and destruction of their property. Plaintiff claims that this was part of a scheme or plan on the part of defendants to refuse housing to black applicants.

On January 18, 1980, plaintiff filed a complaint with the Maryland Commission on Human Relations. Plaintiff claims that, subsequently, after an investigation of his claim the Equal Employment Opportunity Commission ("EEOC") found reasonable cause to believe that his charge of employment discrimination was true. After efforts to reach a voluntary settlement proved unsuccessful, the EEOC notified plaintiff of his right to sue on July 18, 1983. Plaintiff, represented by counsel, filed the instant action on October 14, 1983, within the ninety day time limit imposed by 42 U.S.C. § 2000e–5(f)(1). In his prayer for relief, plaintiff seeks (1) a declaratory judgment that defendants' actions violated plaintiff's rights as provided by sections 1981 and 2000e–2 and Maryland common law; (2) a permanent injunction enjoining defendants, their officers, agents, successors, and employees from engaging in any employment policies or practices which discriminate against plaintiff on the basis of race; (3) a judgment awarding plaintiff back pay, future pay, reimbursement for lost benefits and other monetary relief; (4) $1,500,000 in punitive damages; and (5) an award of interest and reasonable attorneys fees, costs, and disbursements, together with such additional relief as this Court deems appropriate.

Plaintiff made his first attempt to serve the summons and complaint on January 16, 1984, more than ninety days after the suit was filed, and after this Court had written a letter dated January 9, 1984 to counsel for plaintiff requesting that such counsel file a status report concerning service of process. Plaintiff mailed the papers, certified mail return receipt requested, to Riverdale Village and Apartments, Three Byway South, Middle River, Maryland and to defendants Daniel Ruda and David Schlesinger at the same Byway South address. Sandra Crowe, the building manager for Whitegate-Edgewater, allegedly signed for the letters.[3] Believing that that was insufficient service because Ms. Crowe was not named as a defendant, plaintiff informed the Court by letter dated January 23, 1984, that he intended to make a second attempt to obtain service of process by private process server. Thereafter, on February 6, 1984, defendants moved to dismiss the complaint for insufficient and untimely service of process and asserted a lack of personal jurisdiction over any of the named defendants. Defendants maintained that (1) "Whitegate-Edgewater" and "Riverdale Apartments" are merely names of an apartment complex and are not business

---

3. Plaintiff's counsel's January 23, 1984 status report concerning service of process and the certified mail receipts themselves indicate that Lisa Walters, "a person other than those named in the complaint[,]" signed for the deliveries. For the reasons stated *infra*, that discrepancy does not appear to be relevant and/or material.

entities capable of being sued in Maryland; (2) service of process occurred more than ninety days after the complaint was filed, and was therefore untimely under Local Rule 33(b); (3) service was defective under Federal Civil Rule 4, because the mailing did not contain a notice and acknowledgment or a return envelope as required by Federal Civil Rule 4(c)(2)(C)(ii); and (4) service on defendants Schlesinger, Ruda and Price was either defective or was never accomplished.

While that motion to dismiss was pending, plaintiff again attempted to effect service of process on defendants. On or about February 23, 1984, a private process server hired by plaintiff made several attempts to serve defendants. Those attempts are discussed in some detail *infra*. Following those attempts, defendants, on March 14, 1984, filed a renewed motion to dismiss upon essentially the same grounds as the original motion. In a reply brief, filed at the insistence of the Court, and in subsequent submissions, plaintiff maintains that service was properly made upon Edgewater Equity Limited Partnership, the owner of the apartment complex, and upon defendants Schlesinger and Ruda.

## SERVICE UPON THE PARTNERSHIP

■ Plaintiff argues that service of process was properly made upon Edgewater Equity Limited Partnership [4] on January 16, 1984 pursuant to Federal Civil

Rule 4(d)(3) when the certified mailing of the summons and of the complaint was accepted by Sandra Crowe, the building manager of Whitegate-Edgewater. Plaintiff's reliance on Rule 4(d)(3) to support his claim that the certified mailing was sufficient is, however, misplaced. Rule 4(d)(3) delineates those persons to be served when suing a partnership. Service by mail under the Federal Rules is expressly governed by Federal Civil Rule 4(c)(2)(C)(ii). That rule provides for service upon a partnership

> by mailing a copy of the summons and complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender. . . .

The January 16th certified mailing did not comport with those requirements for service by mail, because it did not contain two copies of a notice and acknowledgment, nor did it include a self-addressed, stamped return envelope. "The enclosure of [the] notices is determinative of whether service has been made or attempted pursuant to Rule 4(c)(2)(C)(ii), or not." *Henry v. Glaize Maryland Orchards, Inc.*, 103 F.R.D. 589, 590 (D.Md.1984) (*citing Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087 (4th Cir.1984)). While the case law indicates a liberal construction of the provisions of Rule 4, *see, e.g., Karlson*

---

**4.** Defendants maintain that plaintiff's complaint improperly names Whitegate-Edgewater, a/k/a Riverdale Apartments, as defendant rather than Edgewater Equity Limited Partnership. Inasmuch as Whitegate-Edgewater is merely a piece of partnership property, defendants argue it is not amenable to suit. Defendants maintain that that misnomer warrants dismissal of the complaint against Whitegate-Edgewater. They note that plaintiff did not move to amend the complaint until June 3, 1985, despite the fact that defendants' February 6, 1985 motion to dismiss raised the issue of the proper name of the partnership entity. Defendants also claim that plaintiff was shopping for a new defendant since the administrative complaint against Edgewater Equity Limited Partnership was dismissed on jurisdictional grounds. Although the partnership was improperly identified in the within case, everyone involved in the action,

including defendants, knew of and could identify the entity being sued. *See United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873–75 (4th Cir.1947). Plaintiff and defendants had been involved in the EEOC complaint process prior to the filing of the lawsuit. The EEOC found reasonable cause to believe plaintiff's charge of employment discrimination was true and entered into negotiations with defendants to settle the matter. Shortly after those negotiations broke off, plaintiff filed the instant action alleging the same violations contained in the EEOC complaint. Under those circumstances, defendants almost certainly knew or should have known that the lawsuit was directed at Edgewater Equity Limited Partnership. Therefore, this Court concludes that defendants were not prejudiced by the said misnomer and that the said misnomer alone does not warrant dismissal of the within action.

*v. Rabinowitz*, 318 F.2d 666, 668 (4th Cir. 1963), "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir.1984) (footnote omitted). *See also* 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1083, at 332–33 (1969) ("Wright & Miller"). The rule plainly establishes the requirements for service by mail. Plaintiff, for whatever reason, did not comply with those requirements, and thus failed properly to effectuate service. *See, e.g., Chronister v. Sam Tanksley Trucking, Inc.*, 569 F.Supp. 464, 468–70, *reconsideration granted on other grounds*, 109 F.R.D. 1 (N.D.Ill.1983) (certified mailing accompanied by a return of service postcard seemingly held insufficient to meet the two-copies-of-notice-and-acknowledgment requirement under Rule 4(c)(2)(C)(ii)).

In addition to mail service pursuant to Rule 4(c)(2)(C)(ii), the question arises as to whether service could have been made herein under Rule 4(c)(2)(C)(i).[5] That Rule provides:

> (C) A summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule—
>
> > (i) pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant in an action brought in the courts of general jurisdiction of that State....

In Maryland, the circuit courts are courts of general jurisdiction, Md.Cts. & Jud.Proc. Code Ann. § 1–501 (1984), and service upon a foreign limited partnership doing business in the state is governed by Maryland Rule 2–124(c),[6] which provides:

> [S]ervice is made upon [an association] by serving its resident agent, president, secretary, or treasurer. If the ... association ... has no resident agent or if a good faith attempt to serve the resident agent, president, secretary, or treasurer has failed, service may be made by serving the manager, any director, vice president, assistant secretary, assistant treasurer, or other person expressly or impliedly authorized to receive service of process. If [an association] required by statute of this State to have a resident agent has no resident agent or if two good faith attempts on separate days to serve the resident agent have failed, service may be made by serving two copies of the summons, complaint, and all other papers filed with it, together with the requisite fee, upon the State Department of Assessments and Taxation.

Service by mail is governed by Maryland Rule 2–121(a), which provides that:

> Service of process may be made within this State or outside this State when authorized by the law of this State ... by mailing to the person to be served a copy of the summons, complaint, and all other papers filed with it by certified mail requesting: "Restricted Delivery—show to whom, date, address of delivery." Service by certified mail under this Rule is complete upon delivery.

■ In the within case, despite the fact that service was apparently accepted by Sandra Crowe, the building manager, that attempted mail service upon the partner-

---

5. In *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d at 1089, Judge Haynsworth noted that in instances where service by mail is ineffective, Rule 4(c)(2)(C)(ii) provides for personal service upon an agent of the corporate defendant or an individual defendant pursuant to Rule 4(d)(1) or 4(d)(3). Judge Haynsworth then went on to explain that "[o]nce service is attempted under Rule 4(c)(2)(C)(ii), service of process in accordance with state law, as otherwise authorized by 4(c)(2)(C)(i), is not permissible." Thus, it would appear that service pursuant to Rule 4(c)(2)(C)(i) and state law was not available herein. However, as discussed *infra*, even if service under Maryland law had been available, it was not appropriately effected herein.

6. Section 6–301 of the Courts and Judicial Proceedings article of the Maryland Code provides that "[i]n addition to any method allowed by law, service of process may be made in accordance with the Maryland Rules or the Maryland District Rules."

ship and upon one of the partners, defendant Schlesinger, was nevertheless insufficient under Maryland law. First, the certified mailing did not request "Restricted Delivery", as required by Maryland Rule 2–121(a). Even if restricted delivery had been requested, neither defendant Ruda nor defendant Schlesinger, the persons named on the certified mail receipts, signed for the delivery.

Second, Ms. Crowe is not a designated agent for service of process. Nor has plaintiff in any way demonstrated that Ms. Crowe was any of the persons listed in Maryland Rule 2–124(c), or that she was otherwise authorized by law or by appointment to accept service of process on behalf of any of the defendants. See Federal Civil Rule 4(d)(3). Plaintiff argues that as building manager, Ms. Crowe qualifies as a "manager" (Md.R. 2–124(c)) or as a "managing agent" (Federal Civil Rule 4(d)(3)). However, defendant Schlesinger, not Ms. Crowe, is, or was, at the relevant times in question, the managing partner of the partnership property at issue herein. "Where actual appointment to accept service is not shown, the service is invalid." 2 J. Moore, J. Lucas, H. Fink, & C. Thompson, *Moore's Federal Practice* ¶ 4.12, at 4–138 to 4–139 & nn. 1–2 (2d ed. 1986) ("Moore's Federal Practice"). *See also Schultz v. Schultz,* 436 F.2d 635 (7th Cir.1971) (an agent for service of process must be one who is authorized either by appointment or by law to receive service). *Gipson v. Township of Bass River,* 82 F.R.D. 122, 124 (D.N.J.1979) (same). Ms. Crowe's affidavits indicate she had no authority to accept service for defendants Ruda or Schlesinger. Plaintiff has introduced no evidence tending to con-

tradict these statements. "The agent's acceptance of service ... is insufficient, standing alone, to establish authorization to receive process." 2 *Moore's Federal Practice* ¶ 4.12, at 4–143 (footnote omitted). Accordingly, the service herein on Sandra Crowe did not constitute service on the partnership.[7]

## SERVICE UPON THE INDIVIDUAL DEFENDANTS

Plaintiff maintains taht defendants Schlesinger and Ruda are being sued "jointly and individually in their business capacity in an unincorporated association." Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Defendants' Renewed Motion to Dismiss, p. 3, dated July 27, 1984. Defendant Schlesinger is a general partner in Edgewater Equity Limited Partnership and defendant Ruda is the general manager of that partnership. Plaintiff asserts that inasmuch as he is suing the individual defendants in their business capacities only, service of process is governed by Federal Civil Rule 4(d)(3) pertaining to corporations, partnerships, and unincorporated associations. However, in order to obtain a judgment against an individual member of a partnership or association, a plaintiff must serve the individual. *See* 4 Wright & Miller, § 1105, at 405–06. "A judgment against a partnership is not binding upon a partner in his individual capacity where rendered in an action without service upon him." *Olsen v. Puntervold,* 338 F.2d 21, 22 (5th Cir.1964) (per curium). In the present case, plaintiff seeks declaratory, injunctive and monetary relief against each of the defend-

---

7. Defendants have also moved to dismiss the complaint pursuant to Local Rule 33(b) of the Rules of the United States District Court for the District of Maryland. That rule provides:

(B) Actions or proceedings in which the party or parties demanding affirmative relief have not taken affirmative steps within ninety days of filing such action or proceeding to obtain service of process may be dismissed without prejudice by the court in its discretion, unless sufficient cause to the contrary is shown within thirty days after notice to counsel of record for said party or parties, or to

any party who is proceedings *pro se,* to show cause why said action or proceeding should not be dismissed for failure to take affirmative steps to obtain service of process.

Local Rule 33(b) seemingly requires notice to plaintiff, which notice was not specifically provided. In any event, in view of the fact that service was insufficient under both the federal and Maryland rules, the question of whether defendants' motions to dismiss herein could or should be granted under Local Rule 33(b) need not be reached.

ants. Therefore, it would appear that the sufficiency of service on the individual defendants must be measured under the rules governing service of process on individuals.[8]

Plaintiff argues that the certified mailing of the summons and complaint to Riverdale Village and Apartments on January 16, 1984 was sufficient service upon the individual defendants. Alternatively, plaintiff maintains that the February 1984 service of process by the private process server, Charles Fisher, was sufficient to obtain personal jurisdiction over the individual defendants.

Federal Civil Rule 4(d)(1) provides that personal service shall be made

[u]pon an individual ... by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his *dwelling house or usual place of abode* with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

(Emphasis added). Service of process at a defendant's place of business does not satisfy the requirements of Rule 4(d)(1). *See Gipson v. Township of Bass River*, 82 F.R.D. 122, 125 (D.N.J.1979) ("leaving process at defendants' place of employment does not qualify under the dwelling house or usual place of abode method") (citations omitted). Service upon a defendant in his *official* capacity also does not constitute service upon him *as an individual. Cf. Micklus v. Carlson*, 632 F.2d 227, 240 (3d Cir.1980) ("Where money damages are sought from a public official in his individual capacity, service by certified mail under Rule 4(d)(5) is insufficient") (footnote and citations omitted). It is also to be noted that

[a]s to service on an agent, the agent must be one who is authorized either by

appointment or by law to receive service. Rule 4(d)(1), F.R.Civ.P. The cases dealing with agency by appointment indicate that an actual appointment for the specific purpose of receiving process is normally expected.

*Gibson v. Township of Bass River*, 82 F.R.D. at 125 (citations omitted).

■ Plaintiff's assertion that the January 16, 1984 certified mailing to Riverdale Village constituted proper service of process on the individual defendants is without merit. The mailing was not made to the individual defendants but rather to an apartment complex which was partnership property. As discussed *supra*, service upon a partnership does not constitute service upon the members of the partnership as individuals, nor does the leaving of papers on partnership property constitute proper service on the partnership or the parties. Thus, the certified mailing was insufficient service of process upon the individual defendants under Rule 4(d)(1).

Federal Civil Rule 4 does, however, provide several alternative methods of service upon an individual. Pursuant to Rule 4(c)(2)(C)(i), service upon an individual may be made pursuant to Maryland law. In Maryland, service upon an individual in a suit filed in a Circuit Court is governed by Maryland Rules 2–121(a) and 2–124(a), Rule 2–121(a) is quoted *supra*, at 653. Maryland Rule 2–124(a) provides:

Service is made upon an individual by serving the individual or an agent authorized by appointment or by law to receive service of process for the individual.

■ In the within case service was not effected pursuant to either Maryland Rule 2–121(a) or 2–124(a). With respect to Rule 2–121(a), the certified mail envelope was not endorsed for "Restricted Delivery." However, the fact that defendants Ruda and Schlesinger were served at the apart-

---

**8.** In February 1984, plaintiff hired a private process server to effect service on the individual defendants. That would seem to support the conclusion that the individual defendants had to be served pursuant to the rules governing ser-

vice of process on individuals. In any event to the extent plaintiff has sought herein to serve the individual defendants only in their "business" capacities, such process was also insufficient. *See* the discussion *supra* at 652–54.

ment complex and not at their residences, would not appear to invalidate the service on the individual defendants, had service been effected upon them at the Byway South address, since Maryland Rule 2–121(a) seemingly does not specify *where* service must be made.[9] *Compare* Fed.R. Civ.P. 4(d)(1). With respect to Rule 2–124(a), plaintiff has not demonstrated that Sandra Crowe was an agent authorized by law or by appointment to accept service of process on behalf of any of the individual defendants. *See* discussion *supra* at 10–11.

With respect to the February 1984 attempts at service, the facts surrounding those attempts remain *in* dispute. The relevant dates are not, however, disputed. On or about February 22, 1984, plaintiff's counsel hired a private process server, Charles O. Fisher. On February 23, 1984, Mr. Fisher attempted service on defendant Schlesinger in Freeport, New York, and on February 24, 1984, Mr. Fisher attempted to serve defendant Ruda in Maryland. With respect to defendant Schlesinger, plaintiff and Mr. Fisher claim that on February 23, 1984, at 11:34 a.m., Mr. Fisher went to Mr. Schlesinger's place of business in Freeport, New York, accompanied by a New York City policeman, and that when they first

arrived at the office, a secretary informed them that Mr. Schlesinger was not present. When, however, the officer demanded to see Mr. Schlesinger, he appeared and Mr. Fisher served him personally with the summons, complaint and prayer for jury trial in this case. Defendant Schlesinger's affidavit indicates that on February 23, 1984, he was at work in his office in New York when he heard an object strike the window. Someone outside called his name, prompting him to approach the window. A man below indicated that he had legal papers for the defendant, whereupon he left the papers on the ground and departed. A business associate later found the papers and gave them to defendant Schlesinger.

Inasmuch as service on defendant Schlesinger was attempted outside Maryland, Federal Civil Rules 4(e) and 4(f) are operative.[10] Both rules authorize extraterritorial service pursuant to the law of the state in which the district court sits. *See* 4 Wright & Miller, § 1113. As previously noted, Maryland Rule 2–121(a) permits personal service outside the state either (1) by mailing to the person to be served a copy of the summons and complaint; or (2) in the manner prescribed by the foreign jurisdiction,[11] which in this case is N.Y.Civ.Prac. Law § 308 (McKinney 1982) ("CPLR").[12]

**9.** Accordingly, even if, as defendant Schlesinger states, he is a Connecticut resident, that fact is not dispositive herein.

**10.** Rule 4(e) provides in part:
Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule.
Rule 4(f) provides in part:
All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and, when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

**11.** Maryland Rule 2–121(a) provides, in part, that "[s]ervice outside the State may also be made in the manner prescribed by ... the foreign jurisdiction if reasonably calculated to give actual notice."

**12.** CPLR § 308 provides in part:
Personal service upon a natural person shall be made by any of the following methods:
1. by delivering the summons within the state to the person to be served; or
2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by mailing the summons to the person to be served at his last known residence; ... or
3. by delivering the summons within the state to the agent for service of the person to be served ...; or
4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by mailing the summons to such person at his last known residence; ...
5. in such manner as the court, upon motion without notice, directs, if service is impracticable under paragraphs one, two and four of this section.

■ The attempted service on defendant Schlesinger may or may not have been valid, depending on whose version of the facts is to be believed. Based on plaintiff's account of the events of February 23, 1984, personal service was achieved pursuant to CPLR § 308(1). If, however, defendant Schlesinger's version is true, then the attempted service on defendant Schlesinger did not satisfy either Maryland Rule 2–121(a) or CPLR § 308, since the summons and complaint were not delivered to Schlesinger or anyone else and merely tossing the papers on the ground does not constitute "delivery."

With respect to defendant Ruda, plaintiff and Mr. Fisher claim that on several occasions prior to February 24, 1984, they attempted to serve defendant Ruda at his office in Essex, Maryland, but that he refused to come out of his office. Thereafter, at 10:45 a.m. on February 24, 1984, in the company of two Baltimore County policemen, Mr. Fisher and plaintiff attempted to serve defendant Ruda at the Whitegate-Edgewater apartments in Middle River, Maryland. When Mr. Ruda still allegedly refused to come out of his office, plaintiff, Mr. Fisher and the two policemen placed the complaint, summons and prayer for jury trial on the floor in front of his office. One of defendant's employees then ran out of the office and attempted to throw the papers into plaintiff's vehicle. Because plaintiff closed the window and prevented that from occurring, the employee threw the papers on the ground. Mr. Fisher then placed the papers on the windshield of one of the trucks belonging to the partnership.

The affidavits of Sandra Crowe and David Ruda indicate that during the week of February 20, 1984, Mr. Fisher appeared several times at the Whitegate-Edgewater Apartments office attempting to serve Daniel Ruda. Finally, on February 24, 1984, Mr. Fisher returned with two policemen, and upon learning that defendant Ruda was not on the premises, he left copies of the summons and complaint at the apartment office with Sandra Crowe. Ms. Crowe informed Mr. Fisher that she was not authorized to accept service for defendant Ruda. When Mr. Fisher refused to take the papers back, Ms. Crowe put them on Mr. Fisher's car and returned to her office. Mr. Fisher then placed the papers under the windshield wiper of an automobile parked at the apartment complex. Ms. Crowe removed them and leaned them against a nearby fence. Eventually, Ms. Crowe retrieved the copies and forwarded them to defendants' attorneys.

■ The attempted service on defendant Ruda is ineffective under either version of the facts. The only rules under which these events might constitute proper service of process are Federal Civil Rule 4(d)(1) or Maryland Rule 2–124(a), which permit service on "an agent authorized by appointment or by law to receive service of process." Two factors militate against a finding that the service on Sandra Crowe constituted service on defendant Ruda. First, Ms. Crowe never accepted the service. She informed Mr. Fisher that she was not authorized to accept service and returned the papers. Although Ms. Crowe eventually retrieved the papers and forwarded them to defendants' attorneys, that does not constitute acceptance of service by Ms. Crowe. Second, assuming *arguendo* that Ms. Crowe did accept process, plaintiff has not established that she had authority so to do.[13] *See* discussion *supra*

---

**13.** Pursuant to Maryland Rule 2–121(b), when proof is made by affidavit that a defendant has acted to evade service, a court may order that service be made by mail to the defendant's last known address and by delivery of all papers to a person of suitable age and discretion at the place of business, dwelling place, or usual place of abode of the defendant. If the facts would have permitted plaintiff to file, and plaintiff had timely filed, such an affidavit in the within case, this Court would have carefully considered whether or not to order that service be made pursuant to Rule 2–121(b). However, in view of the fact that the February attempts at service occurred after the 120–day period for service of process provided by Federal Civil Rule 4(j) and in view of the fact that the parties have agreed that events after 120 days are irrelevant under Rule 4(j), provided there were no efforts to evade service of process prior thereto, *see* Joint Submission Regarding Service Issues, ¶ 3, dated

at 653–54. *See also Free State Receivables, Ltd. v. Claims Processing Corporation of New Jersey,* 76 F.R.D. 85, 87 (D.Md. 1977). ("Where the person served is not an agent on whom proper service could be made, the fact that he may have advised the proper corporate official of the complaint is irrelevant.") (citations omitted).

It is undisputed, however, that defendant Schlesinger and defendant Ruda had actual notice of the pendency of the action against them.[14]

> When the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction. When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored.

*Armo, Inc. v. Penrod-Stauffer Building Systems,* 733 F.2d 1087, 1089 (4th Cir.1984) (footnote omitted). In *Miles v. Hamilton,* 269 Md. 708, 309 A.2d 631 (1973), Judge Smith noted that "the fact that the defendant might have had actual knowledge of the suit against him would not cure a defective service." *Id.* at 713, 309 A.2d 631 (citation omitted). In the present case plaintiff's failures were more than mere technical violations of both the federal and Maryland state rules governing service of process and cannot, despite defendants' knowledge of the within action, be ignored. *Cf. Free State Receivables, Ltd. v. Claims*

*Processing Corporation of New Jersey,* 76 F.R.D. at 87.

As to defendant Price, Mr. Fisher's affidavit indicates that at each address at which he attempted to locate defendant Price, the latter was not to be found. That affidavit itself discloses the failure of plaintiff to effect service on defendant Price.

In sum, (1) the January 16, 1984 service on Edgewater Equity Limited Partnership and the individual defendants was insufficient; (2) the February 23, 1984 service on defendant Schlesinger may or may not have been valid; (3) the February 24, 1984 service on defendant Ruda was most likely insufficient; and (4) service on defendant Price was never effected.

### FEDERAL CIVIL RULE 4(j)

Plaintiff's first attempt at service occurred on January 16, 1984, more than 90 days after the complaint was filed on October 14, 1983. Plaintiff's second attempt to serve defendants occurred on or about February 23, 1984, more than 120 days after this suit was filed. Federal Civil Rule 4(a) provides that plaintiff or plaintiff's attorney is "responsible for prmopt service of the summons and ... complaint." Federal Civil Rule 4(j) provides:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action *shall* be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon such motion.[15]

---

June 17, 1985, such action by this Court would not have been or be proper.

**14.** On or about January 16, 1984, Sandra Crowe showed the summons and complaint to defendant Ruda, who made a copy and forwarded the same to defendant Schlesinger.

**15.** Subdivision (j) of Rule 4 became effective February 26, 1983. Since plaintiff's within action was filed on October 14, 1986, it is governed by amended Rule 4. Prior to the 1983 amendments, Rule 4 did not specify a time period within which service was to be accomplished. An action was, however, subject to

dismissal under Federal Civil Rule 4(b) for failure to prosecute where there was an unreasonable delay in serving process. The imposition of a time limitation on service of process was apparently a result of the shift of responsibility for effecting service from the United States Marshals to plaintiffs. *See 2 Moore's Federal Practice* ¶ 4.46, at 4–573.

The issue of timeliness under Rule 4(j) in this case was raised initially by this Court in the light of a provision of the rule itself which expressly provides that a court may dismiss an action upon its "own initiative." "Rule 4(j) requires dismissal regardless of whether any de-

(Emphasis added.) Accordingly, the two February attempts at service, while as indicated *supra* may or may not have been valid, are irrelevant to the question of whether this Court should dismiss this case unless plaintiff can show good cause for failure to effect timely service prior to expiration of the Rule 4(j) 120–day period. In fact, the parties have so agreed. *See* Joint Submission Regarding Service Issues, ¶ 3, dated June 17, 1985. In that context, it is clear that regardless of whether either or both of the two February attempts at service were valid, this Court must focus first on whether plaintiff can show good cause for not effectuating valid service *prior* to February 13, 1984,—the end of the 120–day period. Only if plaintiff can show such good cause may this Court reach any other question herein.

Federal Civil Rule 4(j) does not define "good cause." However, some guidance is provided by the legislative history concerning the 1982 amendments to Rule 4. H.R. 7154, 97th Cong., 2d Sess., 128 Cong.Rec. H 9848, *reprinted in* 1982 U.S.Code Cong. & Ad.News 4434, 4440–42. That report indicates that if a plaintiff has not been diligent in his efforts to serve defendant(s), plaintiff's action should be dismissed without prejudice. If, however,

> the plaintiff has made reasonable efforts to effect service, then the plaintiff can move under Rule 6(b) to enlarge the time within which to serve or can oppose dismissal for failure to serve. A court would undoubtedly permit such a plaintiff additional time within which to effect service. Thus, a diligent plaintiff can preserve the cause of action. This result is consistent with the policy behind the time limit for service ... to encourage prompt movement of civil actions in the federal courts.

1982 U.S.Code Cong. & Ad.News at 4442. Accordingly, Rule 4(j) leads this court to examine the reasonableness and diligence of plaintiff's efforts to serve process. "In-

advertent or heedless non-service is what amended Rule 4(j) is aimed at. *Coleman v. Greyhound Lines, Inc.* 100 F.R.D. 476, 477 (N.D.Ill.1984). Congress intended that a plaintiff who had made reasonable efforts to effect service would be permitted additional time, if needed, under Rule 6(b)." *Arroyo v. Wheat,* 102 F.R.D. 516, 518 (D.Nev.1984) (other citations omitted). *See also Federal Deposit Insurance Corp. v. Sims,* 100 F.R.D. 792, 797 (N.D.Ala.1984) ("[T]he Court will liberally construe plaintiff's abortive efforts at obtaining service as bona fide and therefore GRANTS plaintiff 90 days from this date within which to perfect service properly on defendant or to suffer a dismissal for want of prosecution.").

Courts have differed as to what is evidence of reasonableness and diligence sufficient to support a finding of "good cause." The legislative history indicates that a putative defendant's "evasion of service" in the face of a plaintiff's attempt to effect such service would constitute good cause, and courts have held accordingly. *See Prather v. Raymond Construction Co.,* 570 F.Supp. 278, 282 (N.D.Ga.1983) ("While it is true that plaintiff has not perfected service upon defendant, plaintiff had good cause for not perfecting service.... [D]efendant has in effect evaded service by failing to return the acknowledgement of service."); *Coleman v. Greyhound Lines, Inc.,* 100 F.R.D. at 477 (N.D. Ill.1984) ("[L]egislative history ... provides only a single (and most obvious) illustration of 'good cause'—the putative defendant's 'evasion of service.' 128 Cong.Rec. H 9849, H 9852 n. 25 (daily ed. Dec. 15, 1982) (section-by-section analysis of the 1982 amendments to the Rules, submitted by Rep. Edwards). In this case the reasons advanced as 'good cause' are really no cause at all.... [P]rior counsel's so-called 'inadvertence' is precisely the factor the Rule was aimed at. Its entire focus was to force plaintiffs' (more realistically their lawyers') diligence in order to preserve causes of

---

fendant has moved to dismiss the complaint for insufficiency of service of process." *Burks v. Griffith,* 100 F.R.D. 491, 492 (N.D.N.Y.1984).

*See also* 2 *Moore's Federal Practice* ¶ 4.46, at 4–573.

action against limitations problems. *Id.* at H9851."). As to failure on the plaintiff's part to explain exactly why service has been timely effected, *see Sanders v. Marshall,* 100 F.R.D. 480, 481–82 & nn. 4–6 (W.D.Pa.1984), in which the action was accordingly dismissed.

In *Geller v. Newell,* 602 F.Supp. 501 (S.D.N.Y.1984), the Court held that the "good cause" exception to dismissal under Federal Civil Rule 4(j) was met because as soon as plaintiff had learned that defendant's agent was no longer authorized to accept service of process, plaintiff made extensive inquiries about defendant's whereabouts and "prompt arrangements" for personal service. Service was effected 14 days after the 120–day deadline. *Id.* at 502. The Court wrote:

> While it would be prudent for a plaintiff who will be unable to complete service within the statutory period to move for an enlargement of time under Rule 6(b) prior to the running of the 120 days, the failure to do so does not mandate dismissal under Rule 4(j). In this case, plaintiff was diligent in his efforts to serve defendant and he did, in fact, complete service only 14 days after the deadline. Defendant has not alleged that he was prejudiced in any way by the brief delay. Under these circumstances, dismissal is unwarranted.

*Id.* See also *Arroyo v. Wheat,* 102 F.R.D. 516, 518 (D.Nev.1984) (" 'Good cause' " was shown where "the first service was technically incorrect and the second service was made diligently after the plaintiffs learned of the ineffectiveness of their first attempts. *Walden v. Tulsair Beechcraft, Inc.,* 96 F.R.D. 34, 29 [sic] (W.D.Ark. 1982).") *Arroyo* also cites to cases in which "there was no dilatory or willful delay" and in which "plaintiff's abortive efforts [were] bona fide," as illustrations of situations in which "good cause" has been found to exist. *Id.* at 518.

In other cases courts have dismissed actions where, despite the fact that service had been made prior to the court's decision, service was not made within 120 days of the filing of the complaint. *See, e.g., Burks v. Griffith,* 100 F.R.D. 491, 492 (N.D.N.Y.1984) (averment "that at the present time all defendants have been served" held insufficient to constitute good cause where no "reason [given] for the failure of plaintiffs to timely serve" and where "plaintiffs never sought extensions of time from this court to serve outside the 120 time [sic] period"); *Sanders v. Marshall,* 100 F.R.D. 480, 482 (W.D.Pa.1984) (complaint dismissed where service accomplished on 158th day); *Coleman v. Greyhound Lines, Inc.,* 100 F.R.D. 476, 477–78 (N.D.Ill.1984) (complaint dismissed where service made on 180th day and where there was no reason timely service could not have been obtained). *Cf. Consolidation Coal Co. v. Disabled Miners,* 442 F.2d 1261, 1267–68 (4th Cir.), *cert. denied,* 404 U.S. 911, 92 S.Ct. 228, 30 L.Ed.2d 184 (1971), decided well before Rule 4(j) was amended to its present form.

In addition to the reasonableness and diligence inquiry, the question arises as to whether lack of prejudice to defendants might also be a consideration. *See* Federal Rules in effect before February 26, 1983. *See, e.g., Geller v. Newell,* 602 F.Supp. 501, 502 (S.D.N.Y.1984). In *United States ex rel. Arrow Electronics, Inc. v. G.H. Coffey Co.,* 100 F.R.D. 413, 417 (D.Me.1983), which dealt with a service which seemingly occurred prior to the effective date of present Rule 4(j), the Court, citing Rule 4(j), wrote: "Even within this 120–day period, timeliness of service is measured against plaintiff's diligence in obtaining service and whether the delay prejudiced the defendant, with delays of only a few months generally excused where the evidence demonstrates a valid reason for the delay and where the plaintiff was not engaging in dilatory tactics." *Id.* at 417 (citation omitted). However, under the presently existing rules, the absence of prejudice is *not* of aid to a faulty plaintiff who presents no justifiable reason for his lack of diligent and timely conformance with present Rule 4(j).

While some of [the cases where dismissal under Rule 41(b) was denied] may have

precedential value as to what may constitute "good cause" under new Rule 4(j), the cases which required a showing of prejudice to the defendant in order to dismiss, in our opinion, do not. Since the policy behind the 120–day limit is primarily "to encourage prompt movement of civil actions in federal courts," ... the absence of prejudice to the defendant would not appear to be a relevant consideration.

2 *Moore's Federal Practice* ¶ 4.46, at 4–573 to –574 n. 4.

■ Thus, in order to make a sufficient showing as to why dismissal under Rule 4(j) is not mandated by Rule 4(j), plaintiff herein must show that he has made reasonable and diligent efforts to effect service prior to the 120–day limit, which may include a showing that plaintiff's attempts at service were unsuccessful due to a putative defendant's evasion of process. But a showing that defendants have not been prejudiced by a delay in service does not appear to aid plaintiff to avoid a timeliness bar under Rule 4(j).

■ Careful consideration of plaintiff's efforts to serve defendants in the within case reveals that such efforts were not sufficiently diligent or reasonable to withstand a Rule 4(j) challenge. Plaintiff contends that from on or about the time the complaint was filed in this case he "used due diligence in attempts to ascertain the home addresses of the individual defendants." Memorandum of Law in Opposition to Defendants' Motion to Dismiss and Defendants' Renewed Motion to Dismiss, p. 1, dated July 27, 1984. However, in the within case, defendants' addresses were not unknown. Nor was there any evidence that defendants evaded service *within* the 120–day period. Plaintiff was apparently provided with a list of defendants' addresses back in October 1981, when he received Respondents' Pre-Hearing Memorandum filed in plaintiff's administrative action before the Maryland Commission on Human Relations. *See* Exh. A to Defendants' Memorandum Regarding Rule 4(j), filed April 12, 1985. That memorandum contained the names and addresses of defendants Schlesinger, Ruda and Price. In addition, plaintiff, having lived and worked at the Whitegate-Edgewater apartment complex, was fully aware of that address. Also, plaintiff made no attempts at service prior to this Court's January 9, 1984 inquiry into the status of this case. By January 23, 1984, as indicated by plaintiff's counsel's letter to this Court of that same date, plaintiff was aware that the January 16, 1984 mail service was ineffective as to the individual defendants. In that letter, plaintiff's counsel expressed his intention to serve those defendants through means of a private process server. Yet plaintiff and/or his counsel delayed almost another entire month before hiring a process server and attempting personal service, thereby missing the 120–day, February 13, 1984 deadline by about ten days. No explanation whatsoever has been offered by plaintiff for this latter delay. Furthermore, as of February 6, 1986, when defendants filed a motion to dismiss for insufficient service of process, or soon thereafter, plaintiff was put on notice that the mail service on the partnership may have been ineffective.

Finally, plaintiff did not file a Federal Civil Rule 6(b) motion requesting an extension of time for service, a fact which has been noted by other courts as at least some evidence of lack of diligence. *See Coleman v. Greyhound Lines, Inc.,* 100 F.R.D. at 478; *Sanders v. Marshall,* 100 F.R.D. at 482–83 (*citing* 4 Wright & Miller, § 1138 and 2 *Moore's Federal Practice* ¶ 4.46); *Burks v. Griffith,* 100 F.R.D. at 492.

A plaintiff seeking an extension of the 120–day period of Rule 4(j) does well to apply for the extension while the period is still alive. The court is by no means precluded from granting the extension after the period's expiration ..., but an application beforehand does go some way towards establishing the kind of diligence needed to appeal to a court's discretion.

Practice Commentary C4–38, Federal Civil Rule 4(j), 28 U.S.C. (Supp.1986).

It is true that during the period in question in the within case, plaintiff was not represented by present counsel, who entered his appearance on March 14, 1985, well after plaintiff's early 1984 attempts at service. The parties have agreed, however, that prior counsel's health problems do not excuse any failure to effect service within the time limits of Rule 4(j). Joint Submission Regarding Service Issues, ¶ 2, dated June 17, 1985. Thus, this case would appear to boil down to inadvertence on the part of counsel—a factor which in and of itself does not constitute good cause under Rule 4(j). *See Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir.1985) (per curiam) (citing cases); *Ruley v. Nelson*, 106 F.R.D. 514, 518 (D.Nev.1985) (citing cases). In *Coleman v. Greyhound Lines, Inc.*, 100 F.R.D. at 477–78, the Court refused to grant an extension of time, holding that plaintiff's change of lawyers was an unacceptable excuse for failure to effect timely service, and noting that the 69 days of inaction, or "prior counsel's so-called 'inadvertence[,]' is precisely the factor the Rule was aimed at." *Id.* at 477. Moreover, as is also true in the within case, once counsel became aware of a service problem, there was no reason why service could not have been made within the remaining time. *Id.* at 477–78.

▇ Under Rule 4, plaintiff bears the burden of establishing the validity of service once service has been contested, *see Norlock v. City of Garland*, 768 F.2d 654, 656 (5th Cir.1985), or of demonstrating good cause for any delay. *Coleman v. Greyhound Lines, Inc.*, 100 F.R.D. at 478. Herein, the mail service on the partnership and the mail and personal service on the individual defendants were insufficient prior to February 13, 1984. And, as stressed *supra*, plaintiff has failed to show "good cause" why service was not made within the time period provided by the rule. Under such circumstances, Rule 4(j) requires that the within cause of action *shall* be dismissed.

The language of Rule 4 itself suggests that dismissal is mandatory. Rule 4(j) provides that "[i]f a service of the summons and complaint is not made ... within 120 days after the filing of the complaint ..., the action ... *shall* be dismissed as to that defendant without prejudice...." (Emphasis added.) *See also* H.R. 7154, 97th Cong., 2d Sess., 128 Cong.Rec. H 9848, *reprinted in* 1982 U.S.Code Cong. & Ad.News 4434, 4441 ("proposed subdivision (j) *required* that the action 'be dismissed'" if service is not properly accomplished) (emphasis added).

In *Norlock v. City of Garland*, 768 F.2d 654 (5th Cir.1985), Judge Rubin concluded that Rule 4(j) "mandates dismissal upon a finding that service has not been made within the specified time period and that good cause to extend the time does not exist." *Id.* at 657. The service in *Norlock* did not include copies of the notice and acknowledgment form specifically prescribed by Rule 4(c)(2)(C)(ii) and plaintiff did not attempt to perfect service after the motion to dismiss for failure to serve was filed. In addition, the plaintiff neither moved for additional time under Rule 6(b) nor sought a finding of good cause for an extension under Rule 4(j). In the instant case, while plaintiff did attempt personally to serve defendants after service by mail proved to be defective, plaintiff's counsel did not so do until *after* the 120 days had lapsed, and did not move for additional time pursuant to Rule 6(b). *See also United States ex rel. DeLoss v. Kenner General Contractors, Inc.*, 764 F.2d 707, 710 (9th Cir.1985) (dismissal warranted under Rule 4(j) where record shows that counsel's efforts to effect service were "half-hearted at best"); *Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir.1985) (per curiam) (unexplained neglect of counsel justifies dismissal under Rule 4(j)).

Some cases decided prior to the effective date of Rule 4(j), February 26, 1983, did result in the quashing of defective service of process, but not of dismissal of the action. *See Vorhees v. Fischer & Krecke*, 697 F.2d 574, 576 (4th Cir.1983); *Jim Fox Enterprises, Inc. v. Air France*, 664 F.2d 63, 64–65 (1981), *reh'g denied*, 705 F.2d 738

(5th Cir.1983); *Bailey v. Boilermakers Local 667,* 480 F.Supp. 274, 278 (N.D.W.Va. 1979). While such a liberal approach to procedural matters appeals to this Court, especially in a case such as this in which the statute of limitations may have expired, *see Vorhees,* 697 F.2d at 576, the existing language of Rule 4(j) itself—and more recent case law—would appear to compel this federal district court to dismiss plaintiff's action because good cause for failure timely to serve defendants has not been shown. Accordingly, despite the statute of limitations problems herein, which are discussed *infra* at note 16, this Court hereby grants defendants' motion and renewed motion to dismiss and dismisses plaintiff's complaint without prejudice pursuant to Rule 4(j).

This Court's March 17, 1986 Order also denied plaintiff's motion to amend process pursuant to Federal Civil Rule 4(h). Rule 4(h) provides for amendment of process or proof of service at any time and upon such terms as a court, in its discretion, deems just. But by its terms, Rule 4(h) speaks to "the face of the process and the face of the proof of service of process.... [I]t simply does not speak to the question of defective service of process." *Witherow v. Firestone Tire & Rubber Co.,* 530 F.2d 160, 167 (3d Cir.1976). *See also Cambridge Mutual Fire Insurance Co. v. City of Claxton,* 96 F.R.D. 175, 177–78 (S.D.Ga.1982), *aff'd,* 720 F.2d 1230 (11th Cir.1983); 4 Wright & Miller, § 1131, at 547–48.

In view of this Court's ruling on the motions to dismiss, this Court need not reach plaintiff's motion to amend the complaint nor address the question of whether, should plaintiff attempt to refile his claim in either federal or state court, such an attempt will be met with a successful statute of limitations challenge.[16] It is to be noted, however, that "[a] dismissal without prejudice does not confer upon the plaintiff any rights that the plaintiff does not otherwise possess and leaves a plaintiff whose action has been dismissed in the same position as if the action had never been filed." H.R. 7154, 97th Cong., 2d Sess., 128 Cong. Rec. H 9848, *reprinted in* 1982 U.S.Code Cong. & Ad.News 4434, 4442 (footnote omitted).

The possible unfortunate operation of a successful statute of limitations defense following dismissal of a complaint under Rule 4(j) in this case is apparent. Never-

---

**16.** Plaintiff's complaint seeks relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), 42 U.S.C. § 1981, and under state law for intentional infliction of emotional distress. With respect to the Title VII claim, the 90–day limitation on filing suit expired on or about October 18, 1983. In *Weisgal v. Smith,* 774 F.2d 1277, 1279 (4th Cir.1985), Judge Russell held that notice of the institution of the action must occur within the limitations period, and not within any time remaining thereafter for service of process. Thus, while this Court expresses no opinion herein with respect to the notice issue, this Court notes that any delays in serving process might not toll the limitations period. *See Porter v. Beaumont Enterprise and Journal,* 743 F.2d 269, 273 (5th Cir.1984); 2 *Moore's Federal Practice* ¶ 4.46, at 4–574.

Plaintiff's section 1981 and state law claims are governed by Maryland's three-year general limitations period for civil actions found in Md. Cts. & Jud.Proc.Code Ann. § 5–101 (1984). *See Burnett v. Grattan,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). Plaintiff's cause of action may have arisen as late as October 11, 1979, when plaintiff was terminated from his employment with defendant Whitegate-Edgewater and even as late as January 1981, when plaintiff and his family were still living at the apartment complex. Under both federal and Maryland law, it may be that the filing of the complaint herein, coupled with informal or actual notice of the institution of the action, tolled the limitations period. *See Perkin Elmer v. Trans Mediterranean Airways, S.A.L.,* 107 F.R.D. 55, 60–61 (E.D.N.Y.1985). *Cf. Reed v. Sweeney,* 62 Md. App. 231, 236–38, 488 A.2d 1016 (1985), *cert. denied,* 303 Md. 471, 494 A.2d 939 (1985). *See also* 4 Wright & Miller, § 1056. *But see* 2 *Moore's Federal Practice* ¶ 4.46, at 4–574 ("If the applicable statute of limitations is tolled by filing alone, timely service of process will preserve the action, but dismissal under Rule 4(j) will result in the action being time-barred if the statute has run after the filing of the complaint."); H.R. 7154, 97th Cong., 2d Sess., 128 Cong.Rec. H 9848, *reprinted in* 1982 U.S.Code Cong. & Ad.News 4434, 4441–42 & n. 14 (same). Plaintiff has, however, raised several additional arguments in favor of tolling limitations pursuant to state law with respect to the partnership defendant. Those issues are beyond the scope of this Court's inquiry and in the within opinion accordingly will not be explored at this time.

theless, the desire of both Congress and the Judicial Conference of the United States in promulgating present Federal Civil Rule 4(j), i.e., to move cases through the federal courts in an expedited fashion, may not be ignored. As the Court wrote in *Wei v. Hawaii,* 763 F.2d 370 (9th Cir.1985) (per curiam):

> Wei asks us to balance his deprivation of this federal cause of action against the policy behind Rule 4(j) of promoting prompt movement of civil actions through federal courts. But Congress balanced such policy in enacting Rule 4(j). By providing that district courts "shall" dismiss a complaint served over 120 days after its filing unless service took place in a foreign country or good cause for untimely service has been shown, Congress mandated dismissal in the circumstances of this case. We recognize that Wei may be harmed by his attorney's neglect, but "litigants are bound by the conduct of their attorneys, absent egregious circumstances which are not present here."

*Id.* at 372 (citations omitted).

Similarly, in *Norlock v. City of Garland,* 768 F.2d 654 (5th Cir.1985), Judge Rubin, noting that a new action would most likely be time-barred (but declining to decide the result of dismissal), commented:

> The dismissal rule is designed simply to clear a court's docket, not to prejudice a litigant whose service is defective. Here, however, the litigant did not institute suit until five days before the statute of limitations apparently ran. It is not our function to create exceptions to the rule for cases in which dismissal without prejudice may work prejudice in fact or for some causes of action on the basis that these are more favored than others.

*Id.* at 658. *See also United States ex rel. DeLoss v. Kenner General Contractors,* 764 F.2d 707, 711 n. 5 (9th Cir.1985) ("Congress recognized the possibility that dismissal after the expiration of a statute of limitations could bar a plaintiff from bringing an action.") (citation omitted); *Redding v. Essex Crane Rental Corporation of*

*Alabama,* 752 F.2d 1077, 1078 (5th Cir. 1985) (per curiam) (affirming dismissal under Rule 4(j) when statute of limitations had run); *Burks v. Griffith,* 100 F.R.D. 491, 493 (N.D.N.Y.1984) ("[P]laintiffs must suffer the consequences of dismissal of their cause of action without prejudice but with the knowledge that any attempt at refiling will be met with a successful statute of limitations challenge.").

Under the circumstances of this case, plaintiff's motion to amend process pursuant to Federal Civil Rule 4(h) will be denied and plaintiff's complaint will be dismissed without prejudice.