**T & S RENTALS, a general partnership, M.E. Toth, Patricia Ann Stiles, Patty Joanne Toth, its surviving general partners, AIG Aviation, Inc., Plaintiffs,**

v.

**UNITED STATES of America, and its Agency, the Federal Aviation Administration of the United States Department of Transportation, Defendant.**

Civil Action No. 1:95–CV–39.

United States District Court,
N.D. West Virginia.

Jan. 19, 1996.

William L. Frame, John J. Tigert, VI, Kathryn A. Ledig, Wilson, Frame, Benninger & Metheney, Morgantown, WV, for Plaintiffs.

William D. Wilmoth, United States Attorney, Patrick M. Flatley, Assistant United States Attorney, Wheeling, WV, Frances M. Recio, United States Department of Justice, Torts Branch, Civil Division, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

KEELEY, District Judge.

This matter is before the Court on the motion of the defendant United States of America to dismiss the plaintiffs' complaint for insufficiency of service of process, pursuant to Federal Rules of Civil Procedure 12(b)(5) and 4(m). The issues underlying this motion have been fully briefed in accordance with Local Rule 2.07 and the Court therefore finds it ripe for review. For the reasons that follow, the Court GRANTS the defendant's motion.

## I. BACKGROUND

On September 20, 1992, fourteen year old Eric Casey Christopher and his grandfather, Wayne Stiles, were killed when the Mooney M20K aircraft that Stiles was piloting crashed near Weston, West Virginia's Bennett Field, during a landing attempt. The airplane, which was completely destroyed in the mishap, had been rented to Stiles by plaintiff T & S Rentals ("T & S").

As a direct result of this accident, Judith A. Christopher, mother of Eric Casey Christopher and daughter of Wayne Stiles, filed separate wrongful death suits against T & S

and the United States of America. An additional wrongful death suit was also filed against the United States of America by Wayne Stiles' personal representative.

Contending that the accident was largely the result of the negligence of Federal Aviation Administration ("FAA") employees who worked at Bennett Field, T & S and co-plaintiff AIG Aviation ("AIG") filed an administrative claim with the FAA pursuant to the Federal Tort Claims Act ("FTCA"), on September 19, 1994. This claim was denied on October 5, 1994, and on April 5, 1995, the final day of the six-month jurisdictional window afforded by the FTCA,[1] the plaintiffs filed their complaint in the instant case.

On August 2, 1995, the plaintiffs mailed copies of their complaint and summons to the United States Attorney for the Northern District of West Virginia, the Attorney General of the United States, and the FAA. Federal Rule of Civil Procedure 4(m) allows a plaintiff 120 days from the filing of the complaint in which to effect such service on a defendant. While the copies of the complaint and summons were placed in the mail on the 119th day after the complaint was filed, they did not reach the defendants and, therefore, were not effectively served, until August 4, 1995, the 121st day.

As a consequence, the defendant contends that service was defective under Fed. R.Civ.P. 4(m) and that the complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(5). The plaintiffs, on the other hand, contend that they had "good cause" for the delay in service of process within the meaning of Rule 4(m) and its predecessor, Rule 4(j). Alternatively, they contend that, in the absence of "good cause," this Court has the discretion under Rule 4(m) to grant them a one day extension and should do so.

## II. THE PROPER INTERPRETATION OF RULE 4(M)

Until December 1, 1993, the time period for service of the complaint and summons was governed by Fed.R.Civ.P. 4(j), which stated:

---

1. *See* 28 U.S.C. § 2401(b).

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action *shall* be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

Fed.R.Civ.P. 4(j) (1987) (emphasis added). As of December 1, 1993, Rule 4(j) was redesignated as Rule 4(m) and amended to read as follows:

If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the Court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the Court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (1993).

The plaintiffs argue that the amended language of Rule 4(m) gives the Court discretion to extend the period for service of process in the absence of "good cause." In support of their argument, plaintiffs cite *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298 (3d Cir.1995), in which the Third Circuit discussed the practical differences between Rule 4(m) and its predecessor. According to the Third Circuit,

the former rule required the court to dismiss the case absent a showing of good cause. We read the new rule to require a Court to extend time if good cause is shown and to allow a court discretion to dismiss or extend time absent a showing of good cause.

*Id.* at 1305. The court based its interpretation of Rule 4(m) on "the plain language of the rule itself," *id.*, and on an Advisory Committee Note to rule 4(m) which states:

The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, *and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.*

Fed.R.Civ.P. 4(m), Advisory Committee's Note (1993) (emphasis added).

■ While the reasoning of the Third Circuit in *Petrucelli* might be persuasive if this Court were writing on a blank slate, the Fourth Circuit Court of Appeals has already interpreted Rule 4(m) and this Court is constrained to follow that interpretation. In *Mendez v. Elliot*, 45 F.3d 75 (4th Cir.1995), the court stated:

Rule 4(j) was edited without a change in substance and renumbered as Rule 4(m), effective Dec. 1, 1993. Rule 4(m) requires that if the complaint is not served within 120 days after it is filed, the complaint must be dismissed absent a showing of good cause.

*Id.* at 78.

The plaintiffs urge this Court not to follow *Mendez* because its analysis is not as thorough as that in *Petrucelli*. *Mendez*, they argue, does not take into account differences in the plain language of Rules 4(j) and 4(m), or the advisory committee note mentioned earlier. Although it is true that *Mendez* does not discuss the advisory committee note, it is binding Fourth Circuit precedent that this Court may not ignore simply because another circuit's interpretation is urged to be more logical. Indeed, other district courts in this circuit have applied *Mendez* in circumstances similar to those found here. *See, for example, Braithwaite v. Johns Hopkins Hospital*, 160 F.R.D. 75 (D.Md.1995); *Clark v. E.I. DuPont De Nemours and Co.*, 1995 WL 505977 (W.D.Va. 1995); *Ender v. Cloonan*, 1995 WL 594980 (D.Md.1995); *Contra, Fultz v. Rittlemeyer*, 1995 WL 234531 (W.D.Va.1995).[2]

**2.** Plaintiffs argue that the Court need not feel constrained by *Mendez*, inasmuch as District Judge Michael, of the Western District of Virginia, followed the *Petrucelli* rationale in his decision in *Fultz v. Rittlemeyer*, 1995 WL 234531

(W.D.Va.1995). · Although Judge Michael expressly followed *Petrucelli*, his opinion in *Fultz* made no mention of the *Mendez* decision. Moreover, Judge Michael subsequently adopted the *Mendez* interpretation of Rule 4(m) in deciding

■ Accordingly, under *Mendez*, in order to withstand the defendant's motion to dismiss, the plaintiffs must demonstrate that they had "good cause" for not serving the defendants with a copy of their complaint and summons within the 120 day window provided by rule 4(m). *Mendez*, 45 F.3d at 78.

III. *"GOOD CAUSE" UNDER RULE 4(M)*

■ Although the concept of "good cause" remains unchanged despite the renumbering of Rule 4(j) as Rule 4(m), its exact definition cannot be gleaned by reference to the language of the rules themselves. In *Quann v. Whitegate Edgewater*, 112 F.R.D. 649 (D.Md. 1986), the district court sought to define the parameters of "good cause" within the meaning of Fed.R.Civ.P. 4(j). After examining the legislative history of 4(j), the court concluded that "good cause" existed in situations in which a plaintiff, who was not in technical compliance with the 120 day time limit for service, had nonetheless made "reasonable, diligent" efforts to effect service on the defendant. *Id.* at 659.

In assessing the reasonableness and diligence of the plaintiff's efforts to serve process, the *Quann* court looked to past instances in which other courts had found "good cause" for nonconforming service. In doing so, it found that Fed.R.Civ.P. 4(j)'s legislative history and supporting case law indicated that a defendant's active evasion of service in the face of plaintiffs' attempts to effect such service would constitute "good cause." *See* 128 Cong.Rec. # 9849, # 9852 n. 25 (daily ed. Dec. 15, 1982); *Prather v. Raymond Construction Co.*, 570 F.Supp. 278, 282 (N.D.Ga. 1982). The *Quann* court also referenced several cases in which courts had found "good cause" where a plaintiff had immediately corrected a technically flawed service that had been effected within the 120 day period. *See Geller v. Newell*, 602 F.Supp. 501 (S.D.N.Y. 1984); *Walden v. Tulsair Beechcraft, Inc.*, 96 F.R.D. 34 (W.D.Ark.1982).

The court, however, recognized that "[i]nadvertent or heedless non-service is what amended Rule 4(j) is aimed [to eliminate]," *Quann*, 112 F.R.D. at 659, *quoting Coleman v. Greyhound Lines, Inc.*, 100 F.R.D. 476, 477 (N.D.Ill.1984), and held that "good cause" did not exist in the case before it because the delay in service was attributable to attorney inadvertence and not to external factors that would reasonably stifle a plaintiff's due diligence. *Quann*, 112 F.R.D. at 661. As a basis for this conclusion, the court cited the fact that the plaintiff had been unable, up to that point, to offer any meaningful explanation for the delay, as well as the fact that there were no obstructions to service such as the lack of an address or an evasive defendant. *Id.*

The delay in service in the present case apparently resulted from attorney inadvertence. The only explanation for the delay in service offered by the plaintiffs is the supposed complexities of complying with Fed. R.Civ.P. 4(i), which governs service of process on government agencies and requires that a plaintiff who is suing an agency, officer, or corporation of the United States effect service upon the United States Attorney for the judicial district in which the proceedings are commenced, the Attorney General of the United States, and the agency or officer whose ruling or order is being challenged. Subsection (3) of Rule 4(i) reads:

> The court shall allow a reasonable time for service of process under this subdivision for the purpose of curing the failure to serve multiple officers, agencies, or corporations of the United States if the plaintiff has effected service on either the United States Attorney or the Attorney General of the United States.

Fed.R.Civ.P. 4(i)(3) (1993). The Advisory Committee's Notes to Rule 4(m) specifically state that 4(i)(3) constitutes a "specific instance of good cause." Fed.R.Civ.P. 4(m) Advisory Committee's Note (1993).

Section 4(i)(3) is inapplicable to the present case, however. Neither the United States Attorney for the Northern District of West

*Clark. Clark*, 1995 WL 505977 at 2. Since *Fultz* appears to be the only case in which a district court within the Fourth Circuit has applied the

*Petrucelli* interpretation of Rule 4(m), the Court concludes, that it is an anomaly and need not be distinguished further.

Virginia nor the Attorney General was served within the 120 day period. Both were served on the 121st day. The complexities of compliance with Rule 4(i), therefore, did not cause the failure of the plaintiffs to effect service in the present case.

Plaintiffs also argue that service on the 121st day constitutes good cause when, as here, the applicable statute of limitations bars the refiling of the action. In support of this contention, they cite *Tyson v. Sunnyvale*, 159 F.R.D. 528 (N.D.Cal.1995), in which the district court found "good cause" under Rule 4(m) as a result of the fact that the applicable statute of limitations barred refiling of the claims in issue.

The holding in *Tyson* flies in the face of *Quann*'s notion that "good cause" is a product of a plaintiff's reasonable, diligent efforts to effect service within the statutory period. Indeed, if the Court were to adopt the rule in *Tyson*, plaintiffs would never be obliged to effect service within the statutory window for, as long as the refiling of the claim eventually became time-barred, they would always have "good cause" for an extension. This result is detrimental to the principal aim of Fed.R.Civ.P. 4(m), which is to encourage more efficient, speedy and inexpensive litigation by transferring the burden of effecting service to the litigants. *See Mendez*, 45 F.3d at 78. Under *Tyson*, this burden would remain with the court because plaintiffs would need do no more than simply wait for the court to instruct them to effect service, after the applicable statute of limitations had run on their claims. Realization of the goals of Rule 4(m), therefore, requires a rule that has stiff consequences for non-compliance.

■ Moreover, the Fourth Circuit has indicated that the fact that a claim may be time barred should not have an impact on the "good cause" analysis under Rule 4(m). In *Mendez, supra*, the court stated:

Under Rule 4(j), if a plaintiff is not diligent and fails to serve the complaint within 120 days or such further time period as ordered by the court for good cause, the case shall be dismissed without prejudice. The 'without prejudice' condition permits a plaintiff to refile the complaint as if it had never been filed. Rule 4(j) does not, however, give the appellant a right to refile without the consequences of time defenses, such as the statute of limitations.

*Id.* at 78. The mere fact that a claim would be time-barred if refiled, therefore, does not constitute "good cause" within the meaning of Fed.R.Civ.P. 4(m).

In this case, it is critical that the plaintiffs had almost four months (from April 5 to August 1) after this suit was filed in which to effect proper service. Although all that was required was the timely placing of two copies of the complaint and summons in the mail, they did not do this and have offered no explanation for their failure. Having waited one day too long to effect service of process on the defendants, the plaintiffs must now live with the consequences of that inadvertence.

Accordingly, the plaintiffs have not shown "good cause" within the meaning of Fed. R.Civ.P. 4(m) because they have not demonstrated their "reasonable, diligent efforts to effect service on the defendant." Since service was effected outside the 120 day window provided by Rule 4(m), the complaint must be dismissed, without prejudice, pursuant to Fed.R.Civ.P. 12(b)(3).

## IV. *DISCRETIONARY EXTENSION UNDER PETRUCELLI*

■ Even if the Court heeded the plaintiffs' urging and followed the interpretation of Fed.R.Civ.P. 4(m) adopted by the Third Circuit Court of Appeals in *Petrucelli v. Bohringer & Ratzinger, supra*, the plaintiffs would not be entitled to a discretionary extension of the 120–day service limit. Although they argue that there are several factors that militate in favor of such an extension, the Court does not agree.

The first factor the plaintiffs rely on is that dismissal at this stage would be final since the applicable statute of limitations now bars refiling of their suit. As discussed in *Mendez*, this argument is unpersuasive. If there are no consequences for failure to meet the service deadline, the stated policies underlying the transfer of the burden of service to the litigants will be undermined. 45 F.3d at 78.

As their second factor, the plaintiffs cite their good faith effort to comply with the complexities of Rule 4(i)'s multiple service requirement as proper grounds for a discretionary extension. Arguing that the difficult and burdensome nature of these service requirements warrants a one-day extension of the service period, the plaintiffs rely on *Espinoza v. United States,* 52 F.3d 838 (10th Cir.1995), in which the Tenth Circuit, after adopting the *Petrucelli* interpretation, recognized the complexities of Rule 4(i):

> [T]he complex nature of the requirements of Fed.R.Civ.P. 4(i), particularly when the plaintiff is proceeding *pro se,* should be a factor for the district court's consideration when it determines whether a permissive [discretionary] extension of time should be granted under Rule 4(m).

*Id.* at 842. The court then granted the plaintiff a discretionary extension of the service period, even though he had not made a showing of "good cause."

*Espinoza,* where the plaintiff was *pro se,* is clearly distinguishable from the present case. Here, the plaintiffs have been represented by counsel throughout the course of these proceedings, from the administrative action before the FAA to the filing of the claim in this Court.

Furthermore, if, as the plaintiffs argue, the root of this problem lay in determining who was supposed to be served under Rule 4(i), one would have expected that at least some defendants would have been served before the deadline. Instead, all the defendants were served at the same time ... one day after the statutory window ended. This congruence suggests that attorney inattention, and not an excusable inability to grasp the requirements of Rule 4(i), was at the center of this failure to effect timely service.

As their third factor, the plaintiffs cite the lack of prejudice that would result to the defendant were this suit allowed to proceed. This consideration does not constitute "good cause" under Fed.R.Civ.P. 4(m), however. *See Quann v. Whitegate–Edgewater,* 112 F.R.D. 649, 661 (D.Md.1986). Nor would this Court find that a mere absence of prejudice to the defendant warrants a discretionary extension in a case such as this one.

Finally, as their fourth factor, the plaintiffs argue that the defendant's conduct during the course of this proceeding estops it from filing a motion to dismiss. Specifically, they assert that the defendant evinced a willingness to litigate this matter fully by insisting on compliance with a scheduling order and noticing depositions, and it cannot now seek to dismiss the complaint.

That argument is without merit. There is nothing duplicitous about preparing for trial on the one hand, while asserting a meritorious defense pursuant to Rule 12 on the other. *See McGregor v. U.S.,* 933 F.2d 156 (2d Cir. 1991). As to the depositions, if plaintiffs found the dates to be onerous or impractical, they should have objected instead of raising the issue at this stage. Estoppel is not available to the plaintiffs in this situation.

## V. CONCLUSION

Under the Fourth Circuit's holding in *Mendez v. Elliot, supra,* the plaintiffs must show "good cause" for their failure to effect service within Fed.R.Civ.P. 4(m)'s 120 day period in order to defeat the defendant's motion to dismiss. The Court concludes that the plaintiffs have failed to do so as a consequence of which their claim must be DISMISSED.

Even if the Fourth Circuit were to distinguish *Mendez* and to adopt the Third Circuit's interpretation of Rule 4(m) in *Petrucelli v. Bohringer and Ratzinger, supra,* there are no factors that would warrant a discretionary extension in the absence of "good cause."

## ORDER

For the reasons stated in the accompanying memorandum, the plaintiffs' complaint is DISMISSED without prejudice.