**Shaker HAMMAD,**

v.

**TATE ACCESS FLOORS, INC.**

**Civil No. CCB–98–409.**

United States District Court,
D. Maryland.

Jan. 6, 1999.

Arthur M. Rubenstein, Baltimore, MD, for Plaintiff.

Richard J. Hafets, Larry R. Seegull, Piper & Marbury, Baltimore, MD, for Defendant.

## MEMORANDUM

BLAKE, District Judge.

Now pending before the court is the defendant's motion to dismiss the plaintiff's complaint pursuant to Fed.R.Civ.P. 12. Because the court finds that the plaintiff failed to effectuate service of process upon the defendant in a timely manner, the court will grant the defendant's motion.

## BACKGROUND

Plaintiff Shaker Hammad initiated the present lawsuit on February 10, 1998, when he filed a *pro se* complaint alleging that his former employer, the defendant Tate Access Floors, Inc. (hereinafter "Tate"), had discriminated against him on the basis of his "race, color, religion, national origin and disability," in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq. See* Compl. ¶¶ 3, 5. Specifically, Mr. Hammad, who identifies himself as "an Arab, a Muslim and ... disabled from an injury," *id.* ¶ 5., claims that Tate discriminated against him when, in April 1996, it denied his applications for "several jobs" at the company and, in August 1996, it terminated his employment. *See id.* ¶¶ 4, 6. Mr. Hammad filed a charge of discrimination with the Equal Employment Opportunity Commission in November 1996 and received a right to sue notice on or about November 14, 1997. *See id.* ¶ 10 & Attachment.

On the day he filed his complaint, Mr. Hammad was issued a summons which, he acknowledges, he failed to serve on Tate within the prescribed 120 days. *See* Pl.Opp. at 2; Fed.R.Civ.P. 4(m). Subsequently, on June 15, 1998, the court sent Mr. Hammad a copy of an order reminding Mr. Hammad that "he bears the responsibility for effecting service of process on the defendant," explaining the necessary procedures for doing so, and directing him to **"TAKE ALL AFFIRMATIVE STEPS** as explained herein to **IMMEDIATELY EFFECTUATE SERVICE OF PROCESS** on defendant." *See* June 15,

1998 Order (emphasis in original). The order clearly informed Mr. Hammad that if service of process was not made, "plaintiff risks dismissal of his cause of action." A second summons thereafter was issued to Mr. Hammad on July 6, 1998, but also went unserved.

In response to Mr. Hammad's continued failure to serve Tate with a summons and a copy of the complaint, *see* Fed.R.Civ.P. 4(c)(1), on August 31, 1998, the court issued an order requiring Mr. Hammad to "show cause within 14 days ... why the claim should not be dismissed without prejudice." *See* August 31, 1998 Order. On September 11, 1998, Arthur M. Rubenstein, Esq., entered an appearance on Mr. Hammad's behalf and responded to the court's show cause order. Mr. Rubenstein explained that a summons had not been served on Tate due to a "misunderstanding" between him and Mr. Hammad such that "each party thought the other was working on the case." *See* Pl. Ans. to Show Cause Order ¶¶ 1, 6. According to Mr. Rubenstein, he had assisted Mr. Hammad in drafting the complaint, and as a result, Mr. Hammad apparently "believed that Mr. Rubenstein was working on the matter," while Mr. Rubenstein believed that the matter was "being handled in proper person." *Id.* ¶ 3. Mr. Rubenstein further indicated that Mr. Hammad's status as an immigrant from Pakistan and his alleged lack of fluency in English may have contributed to this "mix-up." *Id.* ¶¶ 3, 7.

Eventually, after a third summons was issued, Tate was served on November 3, 1998, 266 days after Mr. Hammad originally filed his complaint and the first summons had been issued. Tate now seeks to have Mr. Hammad's complaint dismissed on the grounds that Mr. Hammad failed to serve the summons and a copy of the complaint upon Tate "within 120 days after the filing of the complaint" as required by Fed.R.Civ.P. 4(m). Alternatively, Tate argues that Mr. Hammad's action is time-barred by the applicable statutes of limitations. *See* Def.Mem. at 1, 5–6. This matter has been fully briefed, and no hearing is necessary. *See* Local Rule 105.6.

## ANALYSIS

■ Fed.R.Civ.P. 12(b)(5) provides that a motion to dismiss may be based on "insufficiency of service of process." The requirements for service of process are set forth in Fed.R.Civ.P. 4. Rule 4(c)(1) states, in relevant part:

> A summons shall be served together with a copy of the complaint. The plaintiff is responsible for service of a summons and complaint within the time allowed under subdivision (m) . . . .

Rule 4(m), in turn, provides, in relevant part:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period . . . .

In this case, it is undisputed that Mr. Hammad failed to effect service of process upon Tate within the 120 days specified by Rule 4(m). *See* Pl.Opp. at 2, 9–10. Nonetheless, Mr. Hammad contends that Tate's motion to dismiss should be denied because he has shown good cause for his failure to serve Tate in a timely manner and because, even absent good cause, the court should exercise its discretion under Rule 4(m) to extend the time allowed for service of process. *See id.* at 9–10.

Whether or not the court actually possesses this discretion is a matter of some controversy in this circuit. *Compare, e.g., Eccles v. National Semiconductor Corp.,* 10 F.Supp.2d 514, 519 (D.Md.1998) (district court lacks discretion) *with Coates v. Shalala,* 914 F.Supp. 110, 113 (D.Md.1996) (district court has discretion). In *Mendez v. Elliot,* 45 F.3d 75 (4th Cir.1995), the Fourth Circuit interpreted Rule 4(m) as mandating that "if the complaint is not served within 120 days after it is filed, the complaint *must* be dismissed absent a showing of good cause." *Id.* at 78 (emphasis added). Although the *Mendez* court did not explicitly address the question of whether a district court has the discretion under

Rule 4(m) to extend the time allowed for service in the absence of good cause, the court's opinion makes clear that it believed the answer to be no. *See id.* at 80 ("Rule 4(m) *requires* that good cause be shown for obtaining an extension") (emphasis added); *see also United States v. Britt,* 170 F.R.D. 8, 9 (D.Md.1996) (*Mendez* "insist[s] upon a showing of 'good cause'" for time extensions under Rule 4(m)).

Among the circuit courts that have addressed this issue, the Fourth Circuit stands alone in holding that Rule 4(m) does not permit a district court to grant the plaintiff a discretionary extension of time to effect service of process. The other circuit courts are in agreement that under Rule 4(m), "[e]ven if a plaintiff does not establish good cause, the district court may in its discretion grant an extension of time for service." *Troxell v. Fedders of North America,* Inc., 160 F.3d 381, 383 (7th Cir.1998); *see also De Tie v. Orange County,* 152 F.3d 1109, 1111 n. 5 (9th Cir.1998); *Boley v. Kaymark,* 123 F.3d 756, 758 (3d Cir.1997); *Thompson v. Brown,* 91 F.3d 20, 21 (5th Cir.1996); *Adams v. Allied-Signal Gen. Aviation Avionics,* 74 F.3d 882, 887 (8th Cir.1996); *Espinoza v. United States,* 52 F.3d 838, 840–41 (10th Cir.1995). While the court acknowledges that it is not free to ignore valid Fourth Circuit precedent merely because the overwhelming weight of circuit court authority is to the contrary, *see T & S Rentals v. United States,* 164 F.R.D. 422, 424 (N.D.W.Va.1996), the court believes that the continued vitality of *Mendez* is seriously in doubt.

The current Rule 4(m) was added to the Federal Rules of Civil Procedure in December 1993. Its predecessor provision was the former Rule 4(j), which stated, in relevant part:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant . . . .

Fed.R.Civ.P. 4(j) (1988). The plain language of former Rule 4(j) made clear that under that provision, a district court was *not* permitted to grant the plaintiff an extension of time for service of process without a showing of good cause. *See Powell v. Starwalt,* 866 F.2d 964, 965 (7th Cir.1989).

The *Mendez* court's interpretation of Rule 4(m) was based on the court's assumption that as part of the 1993 revisions to the Federal Rules of Civil Procedure, "Rule 4(j) was edited *without a change in substance* and renumbered as Rule 4(m)." *Mendez,* 45 F.3d at 78 (emphasis added). This assumption is directly contradicted, however, by the Advisory Committee Notes to Rule 4(m), which explain, in relevant part:

> The new subdivision explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and *authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.*

(Emphasis added.) *See also Thompson, supra,* 91 F.3d at 21 n. 1 (rejecting *Mendez* court's treatment of Rule 4(m) as identical to former Rule 4(j)).

More significantly, subsequent to the Fourth Circuit's decision in *Mendez,* the Supreme Court in *Henderson v. United States,* 517 U.S. 654, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996), explained that, whereas under former Rule 4(j) a district court was authorized to extend the 120–day period for service of process only if the plaintiff demonstrated good cause, under Rule 4(m) "courts have been accorded discretion to enlarge the 120–day period 'even if there is no good cause shown.'" *Id.* 116 S.Ct. at 1643 (quoting Advisory Committee Notes to Rule 4(m)); *see also id.* 116 S.Ct. at 1641 n. 5 ("Rule 4(m) . . . permits a district court to enlarge the time for service 'even if there is no good cause shown'"). Although the specific issue before the Court in *Henderson* was not whether Rule 4(m) permits the district court to grant discretionary extensions of time for service of process, the Court's explication of the meaning of Rule 4(m) nevertheless was important to its holding and, in this court's opinion,

should be followed by the lower federal courts. *Accord Cruz v. Hampden County,* 1998 WL 812398, at *2 (D.Mass. November 6, 1998) (citing *Henderson* to support proposition that district court may grant discretionary time extensions under Rule 4(m)); *Thomas v. Arevalo,* 1998 WL 427623, at *12 (S.D.N.Y. July 28, 1998) (same); *but see In re Hall,* 222 B.R. 275, 278 (Bankr.E.D.Va. 1998) (arguing that *Henderson* Court's discussion of Rule 4(m) is mere "dicta" and that *Mendez* court's interpretation "remains binding precedent in this circuit").

The issue in *Henderson* was whether the service of process provisions of Rule 4 "supersede[ ] the Suits in Admiralty Act provision that service on the United States be made 'forthwith.'" *Id.* 116 S.Ct. at 1642; *see* 46 U.S.C. app. § 742. In answering this question in the affirmative, *see* 116 S.Ct. at 1648, the Court first concluded that "Rule 4's regime conflicts irreconcilably with Suits in Admiralty Act § 2's service 'forthwith' instruction." *Id.* at 1644. It was in describing this "Rule 4 regime" that the Court explained that under Rule 4(m), "courts have been accorded discretion to enlarge the 120–day period even if there is no good cause shown." *Id.* at 1643 (internal quotation marks and citation omitted). The two concurring Justices and the three dissenting Justices did not take issue with this interpretation of the rule. Furthermore, in remanding the case for further proceedings consistent with its opinion, *see id.* at 1640, the *Henderson* Court must have anticipated that the district court would apply the interpretation of Rule 4(m) set forth therein. It appears to this court, therefore, that the Supreme Court's understanding of Rule 4(m) is inconsistent with the Fourth Circuit's understanding as set forth in *Mendez.*

In light of the Supreme Court's clear explication of the meaning of Rule 4(m) in *Henderson* to allow discretionary extensions of time for service of process, in conjunction with the other circuit courts' unanimous rejection of the *Mendez* court's position, this court concludes that *Mendez* is no longer good law and that, if given the opportunity, the Fourth Circuit perforce would adopt the interpretation of Rule 4(m) held by the Su-

preme Court and the other circuit courts. Consequently, the court agrees with Mr. Hammad, *see* Pl.Opp. at 3, that under Rule 4(m), it possesses the authority to extend the time allowed for service of process, not only for good cause shown, but also as an exercise of the court's discretion. Nonetheless, the court will grant Tate's motion.

■ First, the court finds that Mr. Hammad has not demonstrated good cause for his failure to serve Tate in a timely manner. Mr. Hammad offers as his only excuse that he was "unaware that he was not being represented by Mr. Rubenstein, [and] assumed that Mr. Rubenstein would serve the Defendant." Pl.Opp. at 9. By way of explanation, Mr. Hammad claims that as a "foreign-born, pro se litigant," he "fail[ed] to understand the nuances of the contractual law of attorney-client relationships." *Id.* He also claims that he "has difficulty understanding English." *Id.* at 2.

As an initial matter, the court questions the credibility of these assertions. Mr. Hammad has presented no evidence supporting his claims. Moreover, according to two resumes Mr. Hammad submitted to Tate, Mr. Hammad has lived and worked in the United States since 1990, he possesses a master's degree in mechanical engineering, and he is "detail-oriented" and has "excellent communications skills." *See* Def. Reply, Exhibits 1 and 2. The court, therefore, rejects Mr. Hammad's apparent implication that he is an unsophisticated individual with poor command of the English language.

Regardless of the truth or falsity of Mr. Hammad's self-characterization, it is well-established that in order to show good cause, a plaintiff must demonstrate that he "made 'reasonable, diligent' efforts to effect service on the defendant." *T & S Rentals, supra*, 164 F.R.D. at 425 (quoting *Quann v. Whitegate–Edgewater*, 112 F.R.D. 649, 659 (D.Md. 1986)). In this case, Mr. Hammad made *no* efforts to effect service on Tate before the expiration of the prescribed time period, even after the court had sent Mr. Hammad a letter explaining his responsibilities under Rule 4 and ordering him to "take all affirmative steps . . . to immediately effectuate service of process on defendant." *See* June 15,

1998 Order (emphasis deleted). Although Mr. Hammad claims that he "believed that the lawyer [Mr. Rubenstein] would take care of the matter," Pl.Opp. at 9, the court finds that this simply is not enough to constitute good cause, especially since the summons for Tate was issued directly to Mr. Hammad when he filed his complaint and the court's June 1998 order expressly informed Mr. Hammad that under Rule 4 *"he* bears the responsibility for effecting service of process on the defendant." (Emphasis added.) If nothing else, the court's June 1998 order should have prompted Mr. Hammad to consult immediately with Mr. Rubenstein about the situation. Under these circumstances, the court is not required by Rule 4(m) to extend the time allowed for service of process. *See Vincent v. Reynolds Memorial Hosp., Inc.*, 141 F.R.D. 436, 437 (N.D.W.Va. 1992) ("Inadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service have generally been waived as insufficient to show good cause").

The court further declines to exercise its discretion, which it believes it possesses under Rule 4(m), to extend the time allowed for service of process, notwithstanding the fact that Mr. Hammad may be barred by the applicable statutes of limitations from reinstituting his case following its dismissal. *See Boley, supra*, 123 F.3d at 759 ("The district court, of course, retains discretion to refuse to extend time, even if the statute of limitations has run"); *cf. Mendez*, 45 F.3d at 78 ("Rule 4(j) [now Rule 4(m) ] does not . . . give the appellant a right to refile without the consequence of time defenses, such as the statute of limitations"). Accordingly, Mr. Hammad's complaint will be dismissed without prejudice as provided by Rule 4(m). Finally, since Mr. Hammad's complaint will be dismissed for insufficient service of process, it is unnecessary for the court to address Tate's substantive arguments concerning the running of the applicable statutes of limitations. *See* Def.Mem. at 5–6. The court, however, cautions Mr. Hammad that should he refile his complaint with knowledge that it

is time-barred, he and/or his attorney may be subject to sanctions under Fed.R.Civ.P. 11.

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The plaintiff's complaint is **dismissed without prejudice**;

2. The clerk shall **close** this case; and

3. Copies of this Order and the accompanying Memorandum shall be mailed to counsel of record.