**Angelo COLASANTE, Plaintiff,**

v.

**WELLS FARGO CORP., INC., d/b/a WELLS FARGO NATIONAL HOME EQUITY GROUP, Defendant.**

No. 4:02–CV–40214.

United States District Court, S.D. Iowa, Central Division.

Dec. 27, 2002.

Roger J. Kuhle, John O. Haraldson, Kuhle Law Office PC, West Des Moines, IA, for plaintiff.

Michael A. Giudicessi, Faegre & Benson, Des Moines, IA, for defendant.

### ORDER ON MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

GRITZNER, District Judge.

This matter comes before the Court on Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment. A hearing on the motion was held on December 12, 2002. Plaintiff was represented by John Haraldson; Defendant was represented by Michael Guidicessi and Angela Morales. For reasons stated below, the Court grants Defendant's Motion to Dismiss and therefore

does not reach the Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed a Complaint on May 7, 2002, alleging Defendant created a sexually hostile work environment in violation of 42 U.S.C. § 2000e and Iowa Code § 216. Defendant filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment on September 26, 2002. In its Motion, Defendant asserts several procedural violations warrant dismissal of the Complaint.

Plaintiff Angelo Colasante ("Colasante") was hired as Vice President of Operation for Wells Fargo Home Equity Group for Polk County, Iowa ("Wells Fargo") on September 8, 1999. Colasante alleges the persistent and harassing conduct of his female supervisor created a sexually hostile work environment and resulted in his termination on February 18, 2000.

On or about June 2000, Colasante filed employment discrimination claims with the Iowa Civil Rights Commission ("ICRC") and the Equal Employment Opportunity Commission ("EEOC"). On January 24, 2002, the Plaintiff received his right-to-sue letter from the ICRC, and he received an administrative release from the EEOC on February 7, 2002.[1]

An action brought under Iowa Code § 216, is barred "unless commenced within ninety days of issuance by the commission of a release". Iowa Code § 216.16(3) (2001). Similarly, an action brought pursuant to 42 U.S.C. § 2000e must be filed within 90 days of receipt of the EEOC administrative release. 42 U.S.C. § 2000e–5(f)(1) (2000). In the present case, Plaintiff filed his complaint 103 days after the issuance of the ICRC right-to-sue letter and 89 days after the issuance of the EEOC administrative release.

On September 2, 2002, Plaintiff's counsel made arrangements with APS International Process Service for overnight delivery at the Defendant's corporate home office in San Francisco, California. However, service was not effected until September 5, 2002, 121 days after the Complaint was filed.

Defendant filed its Motion to Dismiss based on three procedural violations: (1) Plaintiff's state civil rights action should be barred because the Complaint was filed more than 90 days after the ICRC right-to-sue letter was issued; (2) Plaintiff's claim should be dismissed under Federal Rule of Civil Procedure 4(m) because he did not serve Defendant within 120 days of filing his Complaint; and (3) Plaintiff's Complaint should be dismiss under Federal Rule of Civil Procedure 12(b) for insufficient process, insufficient service of process, and failure to state a claim upon which relief may be granted.

Plaintiff has never affirmatively sought an extension of time in which to file his action or amend his pleadings. He is apparently content to raise the issues in resistance to the Defendant's current motions.

In his pleadings, the Plaintiff has responded by arguing there has been no material prejudice to the Defendant and by minimizing the extent of his failures to comply with procedural requirements. At hearing, counsel for the Plaintiff further argued that he had some difficulty communicating with the Plaintiff, particularly because the Plaintiff had moved to another state. No other explanation was offered.

## II. DISCUSSION

### A. State Law Claim Barred by Statute of Limitations

Plaintiff admits his Complaint was filed more than 90 days after receiving his ICRC right-to-sue letter and concedes his state civil rights action is barred. Therefore, Defendant's Motion to Dismiss the state law claim is granted.

---

1. Plaintiff has not filed copies of the EEOC administrative release or the ICRC right-to-sue letter. The dates of those letters as provided by the Plaintiff are incomplete. In his Complaint, Plaintiff states "February 7" as the date the EEOC administrative release was issued without mention of a year; the Complaint does not state the date of the ICRC letter. Defendant provided the dates listed above which Plaintiff concedes are correct.

## B. Untimely Service of Process

### 1. Standard for Dismissal

"A district court has the power to dismiss a case for failure to comply with its rules." *Marshall v. Warwick,* 155 F.3d 1027, 1030 (8th Cir.1998). Federal Rule of Civil Procedure 4(m) ("Rule 4(m)") sets out the prescribed time within which a plaintiff must serve the defendant. Rule 4(m) states:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, *shall* dismiss the. action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court *shall* extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

Fed.R.Civ.P. 4(m) (emphasis added).

When a plaintiff demonstrates good cause for not having timely served the defendant, Rule 4(m) requires the court to allow additional time for plaintiff to effect service. Fed.R.Civ.P. 4(m). "[U]nder Rule 4(m), if the district court concludes there is good cause for plaintiff's failure to serve within 120 days, it *shall* extend the time for service." *Adams v. AlliedSignal Gen. Aviation Avionics,* 74 F.3d 882, 887 (8th Cir.1996); *see Petrucelli v. Bohringer & Ratzinger,* 46 F.3d 1298, 1305 (3d Cir.1995) ("We read the new rule to require a court to extend time if good cause is shown and to allow a court discretion to dismiss or extend time absent a showing of good cause."); *Wortham v. Am. Family Ins. Co.,* 2002 WL 31128057, at *1 (N.D.Iowa Sept.17, 2002) ("Rule 4(m) specifically provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service within the prescribed time period.").

In *Adams v. AlliedSignal Gen. Aviation Avionics,* the Eighth Circuit upheld the district court's decision to deny a permissive extension. *Adams,* 74 F.3d at 887–88. The district court dismissed the complaint with-out prejudice because it found plaintiff did not show good cause for the delay. *Id.* at 885–87. On appeal, the Eighth Circuit specifically refuted plaintiff's argument that the district court abused its discretion by refusing to grant a permissive extension. *Id.* The plaintiff relied on the Advisory Committee Notes to Rule 4(m), arguing that the expiration of the statute of limitations is *grounds* for relief. *Id.* The Eighth Circuit pointed out " 'the running of the statute of limitations does not require the district court to extend time for service of process' ". *Id.* (quoting *Petrucelli,* 46 F.3d at 1306).

Likewise, in *Petrucelli,* the Third Circuit clarified that good cause should not be found *because* the statute of limitations has run. *Petrucelli,* 46 F.3d at 1306 n. 7 ("[H]olding that good cause exists any time the statute of limitations has run would effectively eviscerate Rule 4(m) and defeat the purpose and bar of statutes of repose."). In fact, the district court should not consider the running of the statute of limitations unless and until it finds good cause does not exist. *Id.* at 1306.

### 2. Mandatory Extension Upon Plaintiff's Showing of Good Cause

■ In deciding whether to extend the 120–day period, the district court should first determine whether good cause exists. *Adams,* 74 F.3d at 887 (citing *Petrucelli,* 46 F.3d at 1305). If the district court finds good cause for the delay, the court *must* extend time for service, thus ending the inquiry. *Id.* (citing *Petrucelli,* 46 F.3d at 1305). "If plaintiff fails to show good cause, the court still *may* extend the time for service rather than dismiss the case without prejudice." *Id.* (citing *Petrucelli,* 46 F.3d at 1305). However, *reliance* on a discretionary extension would be misplaced.

■ A precise definition of good cause "cannot be gleaned by reference to the language of the rules themselves". *T & S Rentals v. United States,* 164 F.R.D. 422, 425 (N.D.W.Va.1996). "A showing of good cause requires at least 'excusable neglect'—good faith and some reasonable basis for noncompliance with the rules." *Adams,* 74 F.3d at 887 (citing *Lujano v. Omaha Pub. Power Dist.,* 30 F.3d 1032, 1035 (8th Cir.1994));

*Pellegrin & Levine, Chartered v. Antoine,* 961 F.2d 277, 282–83 (D.C.Cir.1992). In *Adams,* the court found "[w]hen counsel has ample notice of a defect in service, does not attempt an obvious correction, and chooses to defend the validity of the service attempted, there is no good cause for the resulting delay if that method of service fails". *Adams,* 74 F.3d at 887. Similarly, in *Petrucelli v. Bohringer & Ratzinger,* the court reasoned neither "reliance upon a third party or process server" nor "half-hearted efforts by counsel to effect service" constitute good cause. *Petrucelli,* 46 F.3d at 1307.

■ On the other hand, when good cause is not shown, the court *may* in its discretion grant an extension of time to serve the defendant. *Adams,* 74 F.3d at 887 ("If plaintiff fails to show good cause, the court still may extend the time for service rather than dismiss the case without prejudice."); *Petrucelli,* 46 F.3d at 1305 ("[T]he district court may, in its discretion, extend time even absent a finding of good cause."). This discretionary authority should not be understood as *requiring* the district court to grant a *permissive* extension. *Adams,* 74 F.3d at 887–88 (finding the district court did not abuse its discretion under Rule 4(m) by denying an extension absent a show of good cause).

Plaintiff suggests the court in its discretion can allow the matter to proceed if good cause is shown.[2] However, Plaintiff does not explain what constitutes good cause in the present case. Instead, Plaintiff concedes there were some procedural shortcomings resulting from communication problems between the Plaintiff and Plaintiff's counsel, and relies on demonstrating the Defendant has not been prejudiced by the delay.

In determining whether good cause exists, Plaintiff asks the Court to follow the United States Supreme Court's test for "excusable neglect" established in *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership. Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 390–95, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer,* the Supreme Court gave a generous reading to the term "excusable neglect" when applied to rules regarding out-of-timing bankruptcy filings. *Id.* at 392, 113 S.Ct. 1489. The court reasoned "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control". *Id.* The court found the determination of excusable neglect was ultimately an equitable one, made by considering "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant and whether the movant acted in good faith". *Id.* at 395, 113 S.Ct. 1489.[3]

The excusable neglect standard set forth in *Pioneer* is distinct, however, from the good cause standard of Rule 4(m). *See Bartunek v. Bubak,* 941 F.2d 726, 728 (8th Cir.1991) (distinguishing the good cause standard from the excusable neglect standard); *see also In*

---

**2.** Plaintiff cites *Habib v. Gen. Motors Corp.,* 15 F.3d 72, 73 (6th Cir.1994), in support of his argument. *Habib* was decided January 24, 1994, which was shortly after the amendment to Rule 4(m) went into effect on December 1, 1993. *Habib,* 15 F.3d at 72. The amendment increases the district court's discretion in granting a motion to enlarge time and renumbered Rule(j) to Rule 4(m). *AlliedSignal Gen. Aviation Avionics,* 74 F.3d 882, 887 (8th Cir.1996). The *Habib* court did not address a district court's increased discretion to enlarge time in the absence of good cause. *Id.*

**3.** Defendant argues the standard set forth in *Pioneer* is for application of the Federal Rules of Bankruptcy Procedure and not application of Rule 4(m). However, the *Pioneer* test for determining excusable neglect has been extended beyond the Federal Rules of Bankruptcy Procedure. In *Stutson v. United States,* the Supreme Court extended the *Pioneer* understanding of excusable neglect to Federal Rule of Appellate Procedure 4. *Stutson v. United States,* 516 U.S. 193, 196, 116 S.Ct. 600, 133 L.Ed.2d 571 (1996); *Fink v. Union Cent. Life Ins. Co.,* 65 F.3d 722, 723–24 (8th Cir.1995) ("We believe the *Pioneer* interpretation of excusable neglect under the Bankruptcy Rules also applies when interpreting excusable neglect under Federal Rule of Appellate Procedure 4(a)(5)."). Yet, Defendant correctly points out, the *Pioneer* court recognized "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect". *Pioneer,* 507 U.S. at 392, 113 S.Ct. 1489.

re *Kirkland*, 86 F.3d 172, 175 (10th Cir.1996) (stating "[t]he *Pioneer* court did not in any way link its discussion of 'excusable neglect' with 'good cause'"); *Corkrey v. IRS*, 192 F.R.D. 66, 67 (N.D.N.Y.2000) ("A difference exists in the standards for 'excusable neglect' and for 'good cause.'"); *In re DuFour*, 153 B.R. 853, 857 (Bankr.D.Minn.1993) (finding the court in *Pioneer* did not suggest the flexible standard of excusable neglect should also apply to good cause). The good cause standard requires more than excusable neglect. *Lujano*, 30 F.3d at 1035 ("Several courts of appeals have held that good cause requires at least excusable neglect.") (citing *Braxton*, 817 F.2d at 241). "A showing of good cause requires at least 'excusable neglect'—good faith and some reasonable basis for noncompliance with the rules." *Adams*, 74 F.3d at 887.

■ Plaintiff has not demonstrated diligence nor offered a reasonable basis for non-compliance with the rules. Plaintiff's counsel explained there were problems communicating with the Plaintiff which contributed to the delay in filing. This does not explain why arrangements with an out-of-state process server were made just two days before the 120–day deadline. Counsel should have been aware of the high probability service would not be timely and should have requested an extension of time to serve the Defendant. As the *Petrucelli* court stated, "reliance upon a third party or on a process server is an insufficient basis to constitute good cause for failure to timely serve, and is also an insufficient basis for granting an extension of time to effect service." *Petrucelli*, 46 F.3d at 1307.

■ Plaintiff suggests Defendant could have been served sooner if Defendant's in-house counsel would have accepted service. As previously stated, in-house counsel told Plaintiff they would not accept service. Therefore, the Court finds no indication Defendant attempted to hinder service. Defendant's in-house counsel was under no obligation to rescue the Plaintiff from delays of his own making.

Inattention to detail also resulted in the Plaintiff's Complaint incorrectly naming Wells Fargo **Corporation** as the Defendant. The proper party is Wells Fargo **Bank**, Plaintiff's former employer. The Plaintiff was aware of the correct legal entity that was his employer, and made that information available to his counsel in his separate proceeding in bankruptcy,[4] but failed to adequately address this detail in the instant case. Thus, not only was the Complaint untimely served, it was also defective. Plaintiff failed to amend his Complaint to properly name the Defendant. Although the Court recognizes such a misnomer standing alone would not support dismissal,[5] in the present case it illustrates the cumulative effect of Plaintiff's procedural missteps. Plaintiff had ample notice of both the defect in service and the defect in process and yet did not attempt to remedy either one. *See Adams*, 74 F.3d at 887 ("When counsel has ample notice of a defect in service, does not attempt an obvious correction, and chooses to defend the validity of the service attempted, there is no good cause for the resulting delay if that method of service fails."). Plaintiff's consistent procedural errors, failure to take necessary steps to timely deal with communication problems, and essential inattention to procedural requirements cause the Court to conclude there was no reasonable basis for the delay, and, therefore, no good cause to grant an extension under Rule 4(m).

---

**4.** Listed as an asset in the bankruptcy proceeding *In re Angelo J. Colasante, Susan P. Colasante*, Debtors, Case No. 00–03339CH (Bankruptcy Court Southern District of Iowa), is a discrimination suit against "Wells Fargo Bank pending before EEOC".

**5.** In *Roberts v. Michaels*, the Eighth Circuit reasoned that although a defendant deserves to be correctly named in pleadings, the plaintiff, upon request of the court, should be permitted to amend the pleadings. *Roberts v. Michaels*, 219 F.3d 775, 778 (8th Cir.2000) ("The [defendant] corporation had the right to be accurately named in the process and pleadings of the court; and misnomer was properly raised by motion to dismiss .... When the motion was made, however, plaintiff, upon his request, should have been permitted to amend. What was involved was, at most, a mere misnomer that injured no one, and there is no reason why it should not have been corrected by amendment.") (quoting *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873–74 (4th Cir.1947)).

### 3. Discretionary Extension Absent Good Cause

The remaining, and more difficult, issue is whether the Court should grant a discretionary extension in the absence of good cause. The Seventh Circuit suggests the more flexible excusable neglect standard can be used by the court to determine if a permissive extension is warranted. *See Coleman v. Milwaukee Bd. of School Dirs.*, 290 F.3d 932, 934 (7th Cir.2002) ("[T]here is justifiable delay ('good cause'), but there is excusable neglect as well, as grounds for extension. In the first case, that of good cause, an extension is mandatory; in the second, that of excusable neglect, it is permissive, and the judge must be affirmed provided he did not abuse his discretion, that is, act unreasonably, in deciding whether or not the plaintiff's delay was excusable.").

In trying to persuade the Court to apply the *Pioneer* excusable neglect factors, Plaintiff's only real arguments are the lack of prejudice to the Defendant and the insignificant length of the delay. Plaintiff avers the Defendant was on notice a lawsuit was coming and was not prejudiced by the delay. Plaintiff also points out service was only one day late, which did not impact the judicial proceedings.

█ Given the nature and procedural background of this case, the Court can conclude the Defendant had ample notice of the potential for this lawsuit and had actual notice the lawsuit was coming within the limitations period.[6] However, "lack of prejudice to the Defendant, standing alone, does not constitute excusable neglect". *Lau v. Klinger*, 46 F.Supp.2d 1377, 1380 (S.D.Ga.1999) (citing *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3rd Cir.1995)). *Pioneer* is a "balancing test"; therefore, the Court must consider all factors *Pioneer* sets forth. *See Pioneer*, 507 U.S. at 399, 113 S.Ct. 1489 (O'Connor, J., dissenting) (referring to the factors set forth by the majority as a balancing test).

█ In addition to prejudice to the Defendant and the length of the delay, *Pioneer* instructs courts to consider the reason for the delay, including whether the delay was within the party's control, and whether the party acted in good faith. *Id.* Plaintiff's counsel stated there were communication problems with the Plaintiff which were complicated by the Plaintiff's move to California. The Court asked why an extension was not requested when those difficulties became apparent. Counsel responded that he believed he could arrange service within the appointed time. The Plaintiff had, but did not exercise, the control.

The final *Pioneer* factor to consider is the good faith of the party. Plaintiff's suggestion that lack of bad faith constitutes good faith is not persuasive. Good faith, which is defined as "the faithfulness to one's duty or obligation", requires more than a half-hearted effort to timely serve the Defendant. Black's Law Dictionary 700 (7th ed.1999); *see Petrucelli*, 46 F.3d at 1307 ("'Half-hearted' efforts by counsel to effect service of process prior to the deadline do not necessarily excuse a delay, even when dismissal results in the plaintiff's case being time-barred due to the fact that the statute of limitations on the plaintiff's cause of action has run.") (quoting *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81, 83 (3d Cir.1987)).

Plaintiff has not exhibited faithfulness to his duty and obligation of timely service. He did not take necessary steps to facilitate communication with his counsel so that the litigation could be pursued in a timely fashion. He waited until two days before the 120–day deadline to arrange for service. The Complaint incorrectly names the Defendant. He missed the filing deadline for his ICRC claim, serving Defendant 121 days after the Complaint was filed. Despite two extensions, his resistance to the current motions was filed one day beyond the final extension.[7] "[A]t some point, a litigant must bear the consequences of conscious strategic

---

6. The perceived potential for this lawsuit may have been impacted by the unusual procedural path in which the Plaintiff had sought bankruptcy protection and then purchased the right of action out of the bankruptcy estate.

7. The motions for extension of time were not resisted, but came at a point when the circumstances required attention and action.

or tactical decisions . . . ." *Adams,* 74 F.3d at 887.

In granting or denying a discretionary extension, the Advisory Committee Notes to Rule 4(m) suggest the court may consider whether "the applicable statute of limitations would bar the refiled action or if defendant is evading service or conceals a defect in attempted service". Fed.R.Civ.P. 4(m) committee note to 1993 amendment; *see also Petrucelli,* 46 F.3d at 1305–06.

There is no evidence the Defendant has evaded service or concealed any defects in attempted service. The statute of limitations has run, and if the Court dismisses the case, Plaintiff will be time barred from refiling. In *Adams,* the Eighth Circuit upheld the district court's decision to deny a discretionary extension where a dismissal without prejudice similarly barred the plaintiff's claim. "Although this dismissal without prejudice may prove to have severe consequences, the district court correctly applied the applicable rules of civil procedure, carefully considered plaintiffs' arguments on the service issues, and gave plaintiffs repeated opportunities to correct their service insufficiencies. We conclude that the court's ultimate decision to dismiss without prejudice was not an abuse of its substantial Rule 4(m) discretion." *Adams,* 74 F.3d at 887–88. While the Court finds Plaintiff's failures in this case fall a few degrees short of those in *Adams,* the Plaintiff's essential inattention to details and deadlines, without any showing of special circumstances, provides the Court no basis upon which to relieve the Plaintiff of the consequences. As the *Petrucelli* court cautioned, " '[t]he lesson to the federal plaintiff's lawyer is not to take any chances. Treat the 120 days with the respect reserved for a time bomb' ". *Petrucelli,* 46 F.3d at 1307 (quoting *Braxton v. United States,* 817 F.2d 238, 241 (3d Cir.1987)).

### III. CONCLUSION

For the foregoing reasons, the Court finds no good cause requiring an extension of time under Rule 4(m) and finds no basis upon which to grant a discretionary extension. Therefore, Defendant's Motion to Dismiss without prejudice pursuant to Federal Rule of Civil Procedure 4(m) is **granted.**

Having dismissed the case for failure to timely serve the Defendant within 120–days of filing the complaint under Rule 4(m), Defendant's remaining arguments for dismissal based on insufficient service and insufficient service of process and Defendant's alternative motion for summary judgment are **denied as moot.**

**IT IS SO ORDERED.**